## HAMANN v RIDGE TOOL COMPANY

Docket No. 155414. Submitted July 11, 1995, at Grand Rapids. Decided September 5, 1995, at 9:10 A.M. Leave to appeal sought.

Ronald and Patricia Hamann brought an action in the Midland Circuit Court against Ridge Tool Company for damages arising as a result of a fall by Ronald Hamann, allegedly as the result of the failure of the handle frame of a cable hoist purchased from the defendant. The jury returned a verdict for the plaintiffs. The trial court, Paul J. Clulo, J., denied the defendant's motion for a judgment notwithstanding the verdict or for a new trial. The defendant appealed.

The Court of Appeals *held:*

1. The trial court abused its discretion in admitting the testimony of the plaintiffs' expert witness that resulted from the physical examination of pieces of the hoist handle frame that were lost before the defendant's expert witness had the opportunity to examine them. Because of the plaintiffs' failure to preserve the evidence, the defendant was denied the opportunity to examine the evidence. Prejudice to the defendant arose as a result of the testimony of the plaintiffs' expert witness concerning his observations and conclusions drawn from the physical examination of the pieces because that evidence could not be rebutted by the defendant. Whether the evidence was lost or destroyed accidentally or in bad faith is irrelevant, because the defendant suffered the same prejudice in either event. Although reversal is required because of the admission of the expert testimony resulting from the physical examination of the pieces, on retrial the plaintiffs' experts may again testify to those conclusions that can be drawn from the photographs of those pieces, because the photographs were available to the defendant's experts.

2. The plaintiffs presented sufficient evidence to support their theory that the defendant negligently manufactured the cable hoist. The jury properly could find that the defendant was ·

REFERENCES

Am Jur 2d, Evidence § 338.

See ALR Index under Bias or Prejudice; Expert and Opinion Evidence.

negligent in the manufacture of the hoist and that the negligence resulted in Ronald Hamann's injuries.

3. The evidence presented by the plaintiffs was sufficient to support the claim based on the theory of negligent design. On the basis of the expert testimony, the jury could find that the defendant negligently failed to eliminate an unreasonable risk of foreseeable injury by adopting a design that was unable to withstand the load resulting from the partial insertion of the handle in the handle frame and that Ronald Hamann was injured as the result of a partial insertion of the handle.

Reversed and remanded for a new trial.

EVIDENCE — LOST EVIDENCE — EXPERT TESTIMONY.

A party who loses evidence before the opposing party has had the opportunity to examine the evidence is precluded from admitting expert testimony that resulted from the physical examination of the lost evidence where such testimony would result in unfair prejudice; whether the evidence was lost or destroyed accidentally or in bad faith is irrelevant, because the prejudice to the opposing party is the same in either event.

*Skinner & Wildeboer* (by *John L. Wildeboer*), for the plaintiffs.

*Bodman, Longley & Dahling* (by *Theodore Souris, David G. Chardavoyne,* and *Deanna L. Dixon*), and *Smith & Brooker, P.C.* (by *James W. Tarter*), for the defendant.

Before: DOCTOROFF, C.J., and NEFF and CONNOR, JJ.

CONNOR, J. Defendant, Ridge Tool Company, appeals as of right from a jury verdict of $520,000 for plaintiff Ronald Hamann and $70,000 for plaintiff Patricia Hamann.[1] We reverse and remand for a new trial.

During a bridge reinforcement project in 1988, fifty-year-old plaintiff, an ironworker, used a cable

[1] Patricia Hamann's claim of loss of consortium is derivative in nature; thus, in this opinion, "plaintiff" will refer to Ronald Hamann only.

hoist purchased from defendant Ridge Tool Company. Plaintiff, who stood in a condor extension basket, pulled on the handle of the cable hoist, also known as a "come-along," to reposition beams on the bridge. As he pulled the handle, the handle frame broke; plaintiff fell and broke his right knee.[2]

In his complaint against defendant, plaintiff alleged, inter alia, breach of express and implied warranties, negligence, and failure to warn. At the close of plaintiff's proofs, the trial court granted defendant's motion for a directed verdict with respect to the theories of failure to warn and breach of express warranty. Following trial, defendant moved for a judgment notwithstanding the verdict or a new trial, arguing in part that plaintiff failed to establish a prima facie case of negligence. The trial court denied defendant's motion.

In reviewing the trial court's denial of a motion for a judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff. *Thorin v Bloomfield Hills Bd of Ed,* 203 Mich App 692, 696; 513 NW2d 230 (1994). If reasonable jurors honestly could have reached different conclusions, neither the trial court nor this Court may substitute its judgment for that of the jury. *Id.* We review the trial court's refusal to grant defendant's motion for a new trial for an abuse of discretion. *Constantineau v DCI Food Equipment, Inc,* 195 Mich App 511, 514; 491 NW2d 262 (1992).

## I. MISSING EVIDENCE

We find it necessary to reverse because the trial

---

[2] As a consequence of suffering two strokes unrelated to the accident, plaintiff does not recall the accident.

court abused its discretion in admitting expert opinion testimony regarding lost pieces of the hoist handle frame.[3] When the hoist handle frame broke, it shattered into several pieces, three of which were retrieved. One of plaintiff's experts, Norman Frank, examined two of the pieces. The pieces then were delivered to Robert Summitt, another of plaintiff's experts by plaintiff's attorney. While in the custody of Summitt, those pieces were lost. Of the parties' experts, therefore, only Frank had the opportunity to examine the pieces.[4]

Generally, where a party deliberately destroys evidence, or fails to produce it, courts presume that the evidence would operate against the party who destroyed it or failed to produce it. *Johnson v Secretary of State,* 406 Mich 420, 440; 280 NW2d 9 (1979); *Berryman v K mart Corp,* 193 Mich App 88, 101; 483 NW2d 642 (1992); *Ritter v Meijer, Inc,* 128 Mich App 783, 786; 341 NW2d 220 (1983). See also SJI2d 6.01. Plaintiff, however, did not deliberately destroy or fail to produce the pieces; rather, plaintiff misplaced or lost them. Whether a trial court should admit testimony regarding inadvertently lost evidence is an issue of first impression in Michigan.

Other jurisdictions have addressed this point,

---

[3] Plaintiff argues that this issue is precluded from this Court's review because defendant did not isolate and emphasize Norman Frank's testimony on appeal. Nevertheless, defendant did argue that evidence and cites the relevant standard. Thus, plaintiff's point is without merit.

[4] Before trial, defendant requested that the trial court exclude all testimony that relied upon or referred to the photographs or the chemical analysis of the two lost pieces. Plaintiff responded that he would restrict his proofs concerning the two broken pieces to the photographs previously taken of them and argued that he should be able to present evidence of the chemical testing because defendant could have tested the aluminum on the cable hoist's broken handle frame. The trial court allowed plaintiff's experts to testify with respect to the chemical analysis and the photographs of the two lost pieces.

including the Sixth Circuit in *Welsh v United States,* 844 F2d 1239 (CA 6, 1988). In *Welsh,* the defendant doctors removed and discarded the decedent's skull bone flap following an operation rather than sending it to the pathology laboratory. *Id.* at 1241. The Sixth Circuit Court of Appeals noted that an examination of the skull bone flap would have proven or disproven the crucial issue in the case. *Id.* at 1244-1245. The court added:

> "[W]here one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court should draw the strongest allowable inferences in favor of the aggrieved party." The strength of the inference allowable obviously will vary according to the facts and evidentiary posture of a given case. Whether the defendant's actions may result or must result in an inference that the missing evidence would be unfavorable to the spoliator, or result merely in a burden-shifting presumption, will depend upon a case by case analysis. [*Id.* at 1247. Citation omitted.]

In the products liability context, there have been several cases in which one party was able to have its experts examine the evidence but then either negligently destroyed or accidentally lost the evidence without providing the other party's experts an opportunity to examine it. The courts that have addressed whether the evidence is admissible have not allowed the party that lost the evidence to produce expert testimony based on that evidence if it would substantially prejudice the other party.

In *Dillon v Nissan Motor Co, Ltd,* 986 F2d 263 (CA 8, 1993), the Eighth Circuit Court of Appeals upheld the district court's exclusion of the plaintiff's expert testimony and exhibits. The *Dillon* plaintiff argued that a design defect in a Nissan automobile caused him injuries during an acci-

dent. *Id.* at 265. The plaintiff's experts examined the automobile, and two parts were removed. *Id.* Subsequently, before the defendant could examine it, the vehicle was destroyed. *Id.* at 265-266. Concluding that the defendant had been prejudiced by its inability to perform tests on the vehicle, the magistrate recommended that the plaintiff's expert testimony be excluded. *Id.* at 266. The district court ruled that the expert testimony and any evidence derived from inspection of the vehicle, including photographs, would be excluded. *Id.*

Noting that photographs taken before the destruction of the vehicle failed to document adequately critical areas of the vehicle, the Eighth Circuit Court of Appeals found no abuse of discretion in the district court's ruling that the defendant was prejudiced by the destruction of potentially useful evidence. *Id.* at 268. Accordingly, the *Dillon* court held that the plaintiff's expert testimony and exhibits were properly excluded. *Id.*

In *Unigard Security Ins Co v Lakewood Engineering & Mfg Corp,* 982 F2d 363 (CA 9, 1992), the plaintiff insured a yacht that was destroyed by a fire caused by an unattended heater. Acting under an assumption that subrogation was unavailable, the plaintiff destroyed the heater and the yacht. Subsequently, the plaintiff brought a subrogation claim against the defendant. The defendant filed a counterclaim, asserting the intentional tort of spoliation of evidence. *Id.* at 365. The Ninth Circuit Court of Appeals found that the district court properly exercised its discretion in excluding evidence from the plaintiff's experts about the heater because it would unfairly prejudice the defendant. *Id.* at 368. The court also decided that the district court had the discretion to determine that a rebuttable presumption against the plaintiff would have

been insufficient to cure the prejudice. *Id.* at 368-369.[5]

In the present case, the trial court should not have admitted Frank's testimony that was based upon magnification observations he made of the missing hoist handle pieces. In his testimony, Frank relied upon his examination of the lost pieces in formulating his opinion that the casting was flawed. This testimony was prejudicial and could not be rebutted by defendant. We conclude that the trial court erred in permitting plaintiff to offer testimony about evidence that lost, even though it was unintentionally lost. It would be unfair to permit the negligent party to benefit from his own error. Whether the evidence was destroyed or lost accidently or in bad faith is irrelevant, because the opposing party suffered the same prejudice; specifically, defendant was unable to challenge the evidence or respond to it. Accordingly, we find defendant is entitled to a new trial because of the unfair prejudice resulting from Frank's testimony regarding lost evidence.

Because we have found it necessary to remand this case for a new trial, we will briefly address those claims of error likely to arise again. We are satisfied that the admission of the chemical analysis was harmless error, but reference to the chemi-

[5] See also *DePuy, Inc v Eckes,* 427 So 2d 306, 307-308 (Fla App, 1983) (the defendant accidently lost a piece of a hip prosthesis, which allegedly broke, after the plaintiffs sent it to the defendant but before the plaintiffs' expert had examined it); *American Family Ins Co v Village Pontiac GMC, Inc,* 223 Ill App 3d 624, 627-628; 585 NE2d 1115 (1992) (the plaintiffs destroyed a car that allegedly caused the plaintiffs' home to burn); *Bolton v Massachusetts Bay Transportation Authority,* 32 Mass App 654, 655-657; 593 NE2d 248 (1992) (the defendant scrapped a bus that allegedly caused an accident before plaintiff had an opportunity to inspect it); *Hirsch v General Motors Corp,* 266 NJ Super 222, 264-267; 628 A2d 1108 (1993) (the plaintiffs discarded the Cadillac that allegedly caused the damage); *Fire Ins Exchange v Zenith Radio Corp,* 103 Nev 648, 651-652; 747 P2d 911 (1987) (the plaintiff's expert failed to preserve the television that allegedly caused the fire).

cal analysis should be excluded in the future. The evidence presented that was based on the chemical test had no bearing on the result. Frank testified that the findings from his chemical analysis had no effect on his opinion regarding the strength of the casting. Moreover, while Summitt testified that he received reports of the chemistry of this particular alloy, he did not testify any further about the significance of these reports. Accordingly, the trial court did not abuse its discretion in refusing to grant a new trial on the basis of the admission of this testimony.

Likewise, the trial court did not err in admitting the photographs depicting the missing pieces. The parties were on equal footing as long as Frank was restricted to testifying only to what he could discern from the photographs and not from his independent opportunity to examine the missing pieces under a microscope. Summitt testified that the pieces were lost before he was able to examine them and that he relied solely on the photographs of them. Thus, Summitt did not base his testimony on evidence that was unavailable to defendant.

## II. NEGLIGENT MANUFACTURE

We find that plaintiff presented sufficient evidence to support his theory that defendant negligently manufactured the cable hoist. When the evidence is viewed most favorably to plaintiff, the testimony and all legitimate inferences support plaintiff's claim of negligent manufacture. Because reasonable jurors honestly could have reached different conclusions, the trial court properly denied defendant's motion for a judgment notwithstanding the verdict. *Thorin, supra,* 696. Furthermore, the trial court's refusal to grant defendant's motion for a new trial on this ground did not

constitute an abuse of discretion. *Constantineau, supra,* 514.

The jury reasonably could find from testimony of plaintiff's fellow workers that plaintiff was using the hoist within its capacity and with its original handle.[6] Frank testified that the hoist frame casting was flawed. Defendant's own expert, David Felbeck, testified that there must have been a preexisting crack in the handle frame from a previous overload. The theory of negligent manufacture was buttressed by the fact that there was no dispute that the handle should have bent before the handle frame fractured if the cable hoist was overloaded. In the present case, the handle frame fractured and the handle did not bend. Under these circumstances, the trial court did not err in concluding that the jury reasonably could find that a casting flaw caused the handle frame to break prematurely.

### III. NEGLIGENT DESIGN

Finally, we find plaintiff presented sufficient evidence with respect to his theory of negligent design. Having reviewed the record, we conclude that a jury could find that defendant negligently failed to eliminate an unreasonable risk of foreseeable injury because the cable hoist's design allowed the partial insertion of the handle.[7] *Prentis*

---

[6] It was within the province of the jury to reject the opinion expressed by both plaintiff's and defendant's experts that plaintiff used a substitute handle on the hoist.

[7] We note that plaintiff presented insufficient evidence that defendant's selection of aluminum for the casting was a design defect. Although plaintiff's expert, Summitt, testified that aluminum was a "poor application," he was unable to propose a replacement feature or suggest a different material for the hoist-handle frame because it was not his field. This evidence was not adequate to create an issue of material fact regarding whether the design was defective.

Plaintiff also contended that the design was defective because

*v Yale Mfg Co,* 421 Mich 670, 692-693, 695; 365 NW2d 176 (1984); *Shipman v Fontaine Truck Equipment Co,* 184 Mich App 706, 711; 459 NW2d 30 (1990); *Reeves v Cincinnati, Inc,* 176 Mich App 181, 184; 439 NW2d 326 (1989). Accordingly, the trial court properly refused to grant defendant's motion for a judgment notwithstanding the verdict and did not abuse its discretion in refusing to grant a new trial with respect to the negligence claim insofar as it was based on the theory of defective design. *Thorin, supra; Constantineau, supra.*

The experts agreed that the handle in the present case was inserted only partially into its socket. They also agreed that this would increase the force exerted on the handle frame and would double the force if the handle had been inserted only halfway. Harold Josephs, one of plaintiff's experts, testified that it appeared from the design that a partially inserted handle would operate the cable hoist and that this design feature created a problem. He added that such partial insertion would create additional torque on the handle, which could induce a fracture. Eugene Revolinsky, an expert for the defense, acknowledged that it was foreseeable that someone would use a partially inserted handle. He admitted that the operator's manual did not address this point.

In light of the expert testimony, the jury reasonably could infer that the use of the cable hoist with the proper handle only partly inserted caused the fracture of the handle frame that led to plain-

defendant should have foreseen that workers would utilize a substitute handle. Even if it was foreseeable that a substitute handle would be used if the original was lost, the warnings on the handle and in the manual would make substitution unreasonable. Nonetheless, the adequacy of warnings is generally a question for the trier of fact. *Maletich v Zemaiduk,* 115 Mich App 206, 209-210; 320 NW2d 72 (1982).

tiff's injury. The jury could find that the open socket design created a risk of unreasonable magnitude, because it was foreseeable that an operator would insert the proper handle only partially. Finally, the jury could find that a reasonable design alternative existed to eliminate the danger.[8]

Reversed and remanded for a new trial.

---

[8] Josephs testified that there were two ways to avoid the problems associated with a partial insertion: (1) design a handle that had unique dimensions to ensure that the handle was secure and fully in the socket; or (2) put a steel lining in the handle frame that would distribute the force of a partially inserted handle throughout the cable hoist.