# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN SWOFFORD,

UNPUBLISHED
February 23, 2016

Plaintiff-Appellant,

v

HORACIO ALVAREZ and PAUL AUBE
PETROW,

Defendants-Appellees,

and

FARMERS INSURANCE EXCHANGE,

Defendant.

No. 324530
Calhoun Circuit Court
LC No. 2012-003478-NI

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

In this suit to recover for injuries arising out of an automobile accident, plaintiff, Steven Swofford, appeals by right the jury's verdict of no cause of action in favor of defendant, Paul Petrow. The jury entered a verdict against Petrow's co-defendant, Horacio Alvarez, but that judgment is not at issue on appeal. Swofford argues that the trial court committed two errors at trial that each warrant relief: it instructed the jury on the adverse inference that may be drawn when a party destroys evidence, see M Civ JI 6.01(d), but refused to allow him to present evidence that Petrow's insurer controlled the evidence at issue, and it improperly instructed the jury on the "sudden emergency" doctrine. For the reasons more fully explained below, we agree that the trial court erred in both respects. Because the errors prejudiced Swofford's trial, we reverse and remand for a new trial.

## I. BASIC FACTS

In January 2012, Alvarez put his 1997 Plymouth Voyager up for sale. A couple weeks earlier, Alvarez had noticed that the Voyager's brake pedal was a little bit low, but he stated that it still stopped fine. He drove the Voyager to the end of his driveway and parked it; he did not notice a problem with the brakes at that time.

-1-

Petrow considered buying the Voyager and made an appointment with Alvarez to inspect it. When Petrow arrived at Alvarez's home, the Voyager had the keys in the ignition and was running. Petrow testified that he has a fairly good understanding of vehicle mechanics. He asked Alvarez if "everything on the vehicle work[ed]" and looked under the hood. He described the engine as "generally dirty," having "minor oil leaks, rusty manifolds," and, as he would expect for a vehicle that was 15-years old, the van had chipped and peeled paint, and "other rust." During his inspection, Petrow saw a translucent master cylinder containing brake fluid. Alvarez claimed that he told Petrow that the brake pedal felt "low" before the test drive, but Petrow testified that he was "a hundred-percent-sure [that Alvarez] didn't warn [him] of any [brake problem] before [he] got into the van."

After inspecting the van, Petrow took it for a test drive. Alvarez rode in the passenger seat. Petrow turned out of Alvarez's driveway onto Gethings Road and drove uphill. Alvarez told him then "that the last fellow who looked at [the Voyager] drove it . . . [and] didn't think the brakes were working correctly." Petrow said he "immediately tried the brakes" and "that [t]hey worked quite well." After stopping at the stop sign at the top of the hill, Petrow executed a U-turn to head back down the hill and toward Alvarez's home. He said he was driving 30 to 32 miles per hour, but Alvarez testified that Petrow was travelling at more than 35 miles per hour. Just before reaching Alvarez's driveway, Petrow testified, he "stepped on the brakes to slow down", but "[t]here were no brakes." He pumped the brakes, but the Voyager would not stop. Petrow also slammed on the emergency brake, but the Voyager still did not stop. Petrow testified that Alvarez put the van into park, but it did not help. Petrow stated that, as they approached the intersection with Helmer Road, he shifted into a low gear and laid on the horn; the light ahead was red.

Swofford was driving down Helmer Road. As he approached the intersection with Gethings Road, the light was green. He testified that as he saw a van "just about to hit . . . my Jeep," he never heard a horn and had no time to evade before the van crashed into the right passenger side of his Jeep. The next thing Swofford remembered was waking up on the side of the road, trapped in his car; he was unable to move his right arm or his legs.

Officer Esteban Rivera testified that he responded to the accident. He said neither vehicle was drivable. He stated that he "was told that there was brake failure," but because of the extent of the damage, he could not determine whether the brakes worked before the accident. Emergency responders cut Swofford out of his Jeep and transported him to the hospital. He required spinal surgery and suffered numerous injuries. Testimony established that Swofford's condition was unlikely to improve and that he was permanently disabled.

After the accident, the Voyager was hauled from the scene and sold. Petrow never saw it again. According to Swofford's lawyer, the van was "purchased and disposed of within just weeks of th[e] accident." Alvarez testified that someone towed the vehicle. At the time he had no insurance, but Petrow's insurer, defendant, Farmers Insurance Exchange, sent him a check around March of 2012. Alvarez claimed that the check had his name and Petrow's name, and believed that both men signed the check. Petrow stated that he did not know if or why his name was on the check. Because he owned the vehicle, Alvarez deposited the check and kept the proceeds. Alvarez eventually learned that the car had been sold to a junkyard.

Swofford sued Petrow and Alvarez, in addition to Farmers Insurance, which insured his Jeep. When Farmers offered the full amount permitted under Swofford's insurance policy, the trial court dismissed Farmers Insurance. The case proceeded to trial and, although the trial court had entered a default against Alvarez, he participated in the trial and the jury found him liable.

Swofford filed a motion in limine to prevent Petrow and Alvarez from asserting the sudden emergency doctrine, arguing that the doctrine cannot be used when a crash occurs as a result of a sudden emergency of one's own making: namely, electing to own and operate a vehicle without working brakes. Further, Swofford argued that a sudden emergency must be both sudden and unexpected, but that Petrow and Alvarez had notice of the Voyager's brake problems. Finally, Swofford argued that Petrow's insurer disposed of the van before the brakes could be inspected, which amounted to a violation of Petrow's duty to preserve evidence. As a result, Swofford maintained, the trial court should give M Civ JI 6.01, which would allow the jury to infer that any brake evidence would have been unfavorable to Petrow. Petrow argued that whether he violated a statute and whether the sudden emergency doctrine should apply were jury questions. He denied knowledge of brake problems before the test drive and denied having control over Farmers Insurance's sale of the Voyager because he did not own the van. The trial court denied Swofford's motion to bar use of the sudden emergency doctrine and other defenses, but it agreed to give a jury instruction on destruction of evidence.

Before being dismissed from the case, Farmers Insurance moved to prevent Swofford from arguing spoliation of evidence, asserting that M Civ JI 6.01 only applies to an intentional desire to destroy evidence, which did not occur. Farmers Insurance argued that it was required to sell the Voyager and pay the claim; accordingly, following its regular business practices, it assessed the Voyager's value in January 2012 and sold it to a scrap yard. It paid the claim in February 2012. Farmers Insurance noted that Swofford did not ask to have the car preserved until almost 11 months after the accident.

Swofford argued that Farmers Insurance, as Petrow's insurer and agent, had a duty to prevent the loss or destruction of evidence in its possession, that spoliation can occur through negligence when a party "knew or should have known that evidence should have been preserved," and that Farmers Insurance was aware of the allegation of brake failure within 10 days of the accident and yet failed to preserve the evidence. The trial court allowed Swofford to argue that the van was destroyed about a week after the accident and allowed Petrow to develop whether he personally bought and sold the van, but excluded any mention of "insurance" and left the issue of Petrow's "ownership interest" for the jury.

The testimony and evidence at trial focused on whether the brakes actually failed. Timothy Light, an accident reconstructionist, certified mechanic, and person certified in the area of brake functions, testified that Petrow's "description of what occurred at the moment that he hit the brake as he . . . came down the hill is not consistent with brake system design." He testified that "[b]rake failures are very rare" because the Federal Motor Vehicle Safety Code requires separate front and back braking systems "so that if there's ever a catastrophic failure in one or the other, the opposite will still continue to function as designed." Therefore, he explained, a "complete total front and rear system failure . . . is highly unlikely" and in the "30-plus years" he had worked on vehicles, he had "never heard of that."

Petrow testified that he was familiar with the two types of braking systems on the market, but denied having any knowledge that the breaks were failing before the moment he was heading down the hill. He repeatedly insisted that, were the van available for examination by a mechanic, "it would absolutely show that the brakes failed" because he "was the driver, [he] was the person there, and [he] know[s] that they completely failed."

At trial, there was also testimony as to whether Petrow could have avoided the accident even with a brake failure. Alvarez testified that there was a church with a large parking lot and grassy area across the street from his home. He believed that Petrow could have turned into the church parking lot, had he not been driving so fast. Gary McDonald, who is an accident reconstructionist, similarly testified that Petrow could have turned the Voyager into a field and avoided the intersection had he been driving 30 miles per hour. But Petrow testified that he had already driven by Alvarez's driveway before he realized that the brakes had failed and explained that he was concerned he would drive into a tree if he turned into the grassy area.

The trial court addressed the lost evidence issue by giving the jury M Civ JI 6.01(d) and then instructing it that "[w]hether a party is insured has no bearing whatever on any issue that you must decide. You must refrain from any inference, speculation, or discussion about insurance." To address the sudden emergency doctrine, the trial court first read statutes about running a red light, driving or permitting a vehicle to be driven while in an unsafe condition, and brake requirements, and explained that the jury could infer that Petrow and Alvarez were negligent "[i]f you find that the Defendants violated any of these statutes . . . ." It then instructed the jury that it could excuse the negligence if it found that Petrow was confronted with a sudden emergency, as stated in M Civ JI 12.02.

The jury found that Alvarez was 100% at fault for the accident and required him to pay Swofford $378,000 for his noneconomic losses and $18,000 a year from 2015 to 2035 for his economic damages from future work loss. The jury found that Petrow was not at fault for the accident.

Swofford now appeals in this Court.

## II. SPOLIATION OF EVIDENCE

Swofford first argues that the trial court abused its discretion in choosing to sanction Petrow's failure to produce the brakes by instructing the jury that it could draw an inference adverse to Petrow if the brakes were in his control, while preventing Swofford from presenting any evidence that Petrow's insurer controlled and disposed of the brakes. This Court reviews a trial court's decision to sanction a party for failing to preserve evidence, and the sanction given, for an abuse of discretion. *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997).

Parties have a duty to preserve evidence that they "know[] or reasonably should know is relevant" to potential litigation. *Id*. at 162; see also *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 212; 659 NW2d 684 (2002). If a party fails to preserve such evidence, the trial court may sanction the litigant to protect the integrity of the judicial system. See *Brenner*, 226 Mich App at 159-160; *Hamann v Ridge Tool Co*, 213 Mich App 252, 258; 539 NW2d 753 (1995); *Bloemendaal*, 255 Mich App at 214. The failure to produce evidence can

prejudice an opposing party by removing the opportunity to investigate or rebut evidence. *Hamann*, 213 Mich App at 258. A trial court may properly sanction a party for deliberately or negligently destroying or failing to produce evidence "because the opposing party suffer[s] the same prejudice." *Id.* at 259. A party may be sanctioned even when an insurer is responsible for the loss of the evidence. See *Brenner*, 226 Mich App at 161-162. But it is not appropriate to sue a third party insurance company for failing to preserve evidence because the duty to preserve evidence lies with the party "alleged to have committed the wrong that serves as the basis for the underlying or potential litigation." *Teel v Meredith*, 284 Mich App 660, 664; 774 NW2d 527 (2009).

When determining an appropriate sanction, the trial court must tailor the sanction to the misconduct. *Brenner*, 226 Mich App at 163-164. A "trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Bloemendaal*, 255 Mich App at 212. Sanctions may include dismissal of the action (for extreme cases), "exclusion of evidence that unfairly prejudices the other party[,] or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence." *Brenner*, 226 Mich App at 161.

M Civ JI 6.01, "allows the jury to draw the inference that evidence would have been adverse where a party who is in control of the evidence fails to produce it at trial." *Clark v Kmart Corp*, 249 Mich App 141, 146; 640 NW2d 892 (2002). The instruction "is phrased in a permissive manner" so that the jury may, but "is not required to[,] draw an adverse inference." *Id.* at 146-147. M Civ JI 6.01 should be used when "(1) the evidence was under the control of the party who failed to produce it and could have been produced . . ., (2) no reasonable excuse for the failure to produce the evidence has been given, and (3) the evidence would have been material . . . and not equally available to the opposite party." *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 193; 600 NW2d 129 (1999). The instruction has four versions; option (a) allows the jury to draw the strongest inference against the party that failed to produce evidence and option (d) allows the jury to draw the weakest inference. M Civ JI 6.01. "[T]he court should draw the strongest allowable inferences in favor of the aggrieved party." *Hamann*, 213 Mich App at 256 (quotation marks and citation omitted). A court should use option (d) when the evidence is material but "a question of fact arises in regard to both 'control' and 'reasonable excuse.' " M Civ JI 6.01, note 3.

In this case, the trial court did not abuse its discretion in choosing to sanction Petrow for failing to preserve the brakes. The evidence showed that it was claimed that the van's brakes failed from the time of the accident and Petrow repeatedly insisted that were the van available for examination by a mechanic, "it would absolutely show that the brakes failed." Even though Petrow did not own the car, Farmers Insurance bought and sold the van under its insurance policy with Petrow. There is no evidence that Petrow asked for the van to be preserved. Swofford also suffered prejudice as a result of the lost opportunity to inspect the Voyager's brakes and rebut Petrow's claim of brake failure. *Hamann*, 213 Mich App at 258. Therefore, the trial court properly elected to sanction Petrow for violating his duty to preserve evidence. *Brenner*, 226 Mich App at 159-160, 162. However, under the facts particular to this case, we conclude that the trial court's selection of a remedy fell outside the range of reasonable outcomes.

The court instructed the jury that it could draw an adverse inference from the loss of the evidence:

> The Defendants in this case have not offered the brakes on the vehicle that struck Plaintiff's vehicle for inspection revealing any evidence supporting their claim of sudden emergency because of an unexpected brake failure. You may infer that this evidence would have been adverse to the Defendants if you believed that the evidence was under the control of the Defendants and could have been produced by them and no reasonable excuse for Defendant's failure to produce this evidence has been shown.

This instruction appears appropriate because Petrow disputed whether the brakes were under his control. See M Civ JI 6.01; *Ellsworth*, 236 Mich App at 193. But the trial court effectively nullified this instruction by combining it with a ruling limiting Swofford's ability to present evidence concerning Petrow's insurer. This ruling limited Swofford's ability to argue that Petrow's insurer controlled and destroyed the evidence, effectively preventing the jury from being able to draw the permissive inference that the brake evidence, had it been produced, would have been adverse to Petrow. *Clark*, 249 Mich App at 146-147. Without being able to make this connection at trial, Swofford was left with no remedy for the loss of the evidence. Moreover, the rules of evidence permit the admission of evidence concerning the existence of insurance when offered for a proper purpose. See MRE 411 (prohibiting the admission of evidence that a person was or was not insured against liability "upon the issue whether the person acted negligently", but allowing the admission of such evidence "when offered for another purpose, such as proof of *agency, ownership, or control*") (emphasis added).

It is noteworthy too that, despite the trial court's limitations on evidence of "insurance," Alvarez testified that Farmers Insurance sent him a check for the Voyager that included Petrow's name. However, on the basis of the trial court's ruling, Swofford did not present evidence concerning Petrow's insurance policy, how Farmers Insurance came to control the van, when it took possession of the van, and how Petrow's actions impacted Farmers Insurance's decisions. Without this evidence, the jury had no basis for concluding that Petrow had any control over the final disposition of the van. Accordingly, we conclude that the trial court abused its discretion when it gave an instruction that allowed the jury to make an adverse inference on the basis of Petrow's control over the evidence while preventing Swofford from presenting evidence that Petrow's insurer controlled the van and could have preserved it on his behalf. We also conclude that this error likely affected the fairness of the trial and warrants reversal. See *Ward v Consolidated Rail Corp*, 472 Mich 77, 84; 693 NW2d 366 (2005).

We need not determine the exact sanction necessary. See, e.g., *Brenner*, 226 Mich App at 163-165. Instead, we reverse and remand for a new trial utilizing an appropriate sanction, which could include M Civ JI 6.01 while allowing testimony about Petrow's control of the Voyager, *Ellsworth*, 236 Mich App at 193, or another sanction appropriately tailored to the facts of the case. See *Brenner*, 226 Mich App at 163-164.

On remand, the jury must assess Petrow's liability. Because the sanction only applies to Petrow, we do not disturb the jury's finding that Alvarez breached his duty of care to Swofford and proximately caused the damages already found. See MCR 2.611(A)(1)(a). Nevertheless, if

the jury finds both Petrow and Alvarez liable, it must assess the portions of liability attributable to each. Additionally, we also vacate the trial court's order for case evaluation sanctions. Whether sanctions are appropriate must be determined after retrial. See *Kopf v Bolser*, 286 Mich App 425, 432-433; 780 NW2d 315 (2009).

## III. SUDDEN EMERGENCY DOCTRINE

Swofford next argues that the trial court erred in allowing Petrow to use the sudden emergency doctrine. This Court reviews a trial court's determination whether a jury instruction is applicable to the facts for an abuse of discretion. *Alfieri v Bertorelli*, 295 Mich App 189, 196; 813 NW2d 772 (2012). Whether a sudden emergency existed, so as to excuse a defendant's negligence, is a question of fact. *Poplawski v Huron Clinton Metro Auth*, 78 Mich App 644, 649-650; 260 NW2d 890 (1977).

"[A] violation of a penal statute creates a prima facie case of negligence, a presumption which can be rebutted by affording the alleged wrongdoer an opportunity to come forward with evidence showing an adequate or legally sufficient excuse under the facts and circumstances of the case." *Baumann v Potts*, 82 Mich App 225, 231; 266 NW2d 766 (1978). One of those excuses is the sudden emergency doctrine, which "applies 'when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making.' " *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139-140; 753 NW2d 591 (2008), quoting *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971). The instruction should be given when, viewing the facts in the light most favorable to the defendant, *Manning v Cheboygan Area Sch*, 76 Mich App 700, 703; 257 NW2d 222 (1977), " 'any evidence . . . would allow a jury to conclude that an emergency existed within the meaning of that doctrine,' " *Dennis v Jakeway*, 53 Mich App 68, 74; 218 NW2d 389 (1974), quoting *Wright v Marzolf*, 34 Mich App 612, 614; 192 NW2d 56 (1971). Such an emergency is "either 'unusual' or 'unsuspected.' " *Manning*, 76 Mich App at 703. An "unusual" circumstance is a circumstance that "varies from the everyday traffic routine confronting the motorist." *Vander Laan*, 385 Mich at 232. It most commonly refers to an unusual change in the driving conditions, such as occasioned by a blizzard or other phenomena of nature. *Id.* An unsuspected circumstance, by contrast, involves a peril within the realm of everyday traffic routine, but which has "not been in clear view for any significant length of time, and [that] was totally unexpected." *Id*. That is, the peril must be "suddenly revealed and totally unexpected." *Manning*, 76 Mich App at 703. And the emergency may not "result[] from the defendant's own negligence." *Coon v Williams*, 4 Mich App 325, 337; 144 NW2d 821 (1966).

The doctrine is not an affirmative defense and, therefore, the defendant has no burden of proof. *Baumann*, 82 Mich App at 232. Rather, it is "a logical extension of the reasonably prudent person rule," and the plaintiff must prove that, in light of the sudden emergency, defendant's conduct was unreasonable and, therefore, negligent. *Baker v Alt*, 374 Mich 492, 496-487; 132 NW2d 614 (1965). When applicable, a trial court typically gives M Civ JI 12.01, which states that "the defendant violated a state statute from which negligence may be inferred." Then, the trial court reads M Civ JI 12.02, which states that the jury may "excuse the violation of a statute from which negligence may be inferred" in the event of a sudden emergency.

Contrary to Petrow's argument, a sudden emergency need only be unusual *or* unsuspected. *Vander Laan*, 385 Mich at 232. Nevertheless, although there was evidence that brake failures are unusual, mechanical failures are not natural phenomena and are not outside the everyday experience of drivers. *Id.* A sudden brake failure, however, can constitute a sudden emergency. See *Baumann*, 82 Mich App at 231-232. As such, the sudden emergency doctrine *could* apply to excuse a presumption of negligence arising from operating a vehicle at a higher speed than permits a stop, MCL 257.627, and for failing to stop at a red light, MCL 257.612(C)(1).

The evidence showed that Petrow found a car for sale on the side of the road and took it for a brief test drive. Before the test drive, Petrow checked under the Voyager's hood and observed brake fluid. The brake light did not turn on and, according to Petrow, Alvarez did not warn him of any problems before he took the van for a test drive. Were this the only evidence, whether the brake failure was "totally unexpected" would have been a matter for the jury. *Dennis*, 53 Mich App at 74-75. But this was not the only evidence. Petrow agreed at trial that Alvarez warned him during his test drive that another potential buyer who test drove the van felt that the brakes were not working properly. When asked whether he was on notice that there might be a problem with the brakes at that point, Petrow stated: "That's correct." In response to this information, Petrow said he immediately tested the brakes and they seemed to be working fine, so he continued to drive. By agreeing that Alvarez warned him that there might be a problem with the brakes and stating that he tested the brakes, Petrow conceded that he was aware of the possibility that the van's brakes were not functioning properly. Accordingly, even viewing the evidence in the light most favorable to Petrow, no reasonable jury could find that the potential for brake failure was totally unsuspected; and, for that reason, the trial court should not have instructed the jury on the sudden emergency doctrine. *Id.* Because this error unfairly prejudiced Swofford, it too warrants a new trial. See *Ward*, 472 Mich at 84.

## IV. CONCLUSION

Because these errors independently and collectively warrant a new trial, we reverse and remand for a new trial consistent with this opinion. We also vacate the trial court's order for case evaluation sanctions.

Reversed, vacated, and remanded for a new trial. We do not retain jurisdiction. As the prevailing party, Swofford may tax his costs. MCR 7.219(A).

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly