# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARTIN FITZGERALD ARMSTEAD,

Defendant-Appellant.

UNPUBLISHED
June 14, 2018

No. 333938
Wayne Circuit Court
LC No. 16-000225-01-FH

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of malicious destruction of personal property valued at $1,000 or more but less than $20,000, MCL 750.377a(1)(b)(*i*), for which the trial court sentenced him to four months to five years in prison and ordered him to pay restitution of $3,910 to the city of Detroit Parks and Recreation Department. We affirm.

Defendant's conviction arises from the removal of numerous metal fence posts at Jayne Field, a large park in Detroit, on the evening of October 5, 2014. The prosecution's theory of the case was that under cover of darkness, defendant, who owns a fencing company, used a cordless reciprocating saw (a "sawzall") to cut and remove at least 10 fence posts from around the dugout area of a baseball diamond at Jayne Field, hoping to repurpose them as supplies for his fencing business. The defense theory of the case was that defendant was actually innocent, and he was simply in the wrong place at the wrong time. Specifically, the defense contended that defendant had previously purchased 10 used fence posts for use at a residential job (as evidenced by a handwritten receipt), that the fence posts were similar to the posts that had been removed from Jayne Field by someone other than defendant, that defendant was only present near the park on the evening in question because his work vehicle had broken down, that police testimony about defendant carrying fence posts out of Jayne Field should be discredited by the jury as unbelievable, and that the jury should instead credit the trial testimony of defendant and his employee, Joseph Aaron Patterson.

On appeal, defendant argues that he is entitled to a new trial because his trial counsel performed ineffectively in several respects. He also contends that the trial court abused its

discretion by denying his postjudgment motion for a *Ginther*[1] hearing. We disagree in all respects.

The trial court did not hold a *Ginther* hearing thus "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). The trial court's decision whether to hold a *Ginther* hearing is reviewed for an abuse of discretion, which "occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

To establish a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was objectively unreasonable in light of prevailing professional norms, and that defendant was prejudiced as a result of his counsel's inadequate performance. *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014), citing *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). A defendant is prejudiced if there is a reasonable probability that, but for his counsel's performance, the proceedings would have rendered a different result. *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014).

The defendant bears a heavy burden to show that the assistance afforded him was ineffective. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). Part of this burden is establishing a factual predicate for the claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). And the defendant must overcome a strong presumption that counsel's actions were based on reasonable trial strategy. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243.

Defendant first argues that his trial counsel should have moved to dismiss the case because the 10 fence posts were lost while in police custody. Because any such motion would have been futile, defendant's argument is meritless. See *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

In *People v Dickinson*, 321 Mich App 1; 909 NW2d 24 (2017), we explained:

> To warrant reversal on a claimed due-process violation involving the failure to preserve evidence, a "defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). When the evidence is only "potentially useful," a failure to preserve the evidence does not amount to a due-process violation unless a defendant establishes bad faith. *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988). A "[d]efendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). A prosecutor is not required to "seek and find exculpatory evidence" or assist in

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

building the defendant's case, and [he or she] is not required to "negate every theory consistent with defendant's innocence." *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). [*Id*. at 16.]

In this case, the trial court correctly determined that the lost evidence was only "potentially useful" to the defense. Defendant argues that the lost fence posts might have been exculpatory, but he fails to acknowledge that there is also the distinct possibility that they might have been *inculpatory*, providing evidence of a match between the "stubs" of fence post left at Jayne Field. Consequently, to prevail with a due-process claim concerning the fence posts, defendant would have borne the burden of showing bad faith on behalf of the government. See *Dickinson*, 321 Mich App at 16. Defendant has not satisfied that burden.

Negligence leading to the loss or destruction of evidence is insufficient to show bad faith. *Youngblood*, 488 US at 58. At most, the conduct of the police in this case—improperly filling out an impound form such that a private towing company mistakenly released defendant's work vehicle and its contents—was negligent. Defendant cites no evidence of bad faith, nor does any such evidence appear in the record. Indeed, defendant does not even argue that the police acted in bad faith. For those reasons, any motion to dismiss the charges against defendant on the basis of lost evidence would have been futile, and trial counsel did not perform ineffectively by failing to make such a motion.[2]

Furthermore, we see no reason that a *Ginther* hearing would be necessary to develop a factual record concerning this claim of ineffective assistance, and defendant offers no real explanation in that regard, instead simply announcing that the trial court should have held a *Ginther* hearing. Because defendant has failed to explain what record he would have hoped to make regarding this claim, and how that record might have benefitted him, he has failed to show that the trial court abused its discretion by denying his request for a *Ginther* hearing with regard to counsel's failure to move for dismissal based on lost evidence.

Defendant next argues that trial counsel performed ineffectively by failing to research defenses and consult expert witnesses in metallurgy and metal comparison. Because defendant has failed to present any record evidence of what research counsel actually performed, or

---

[2] The civil case cited by defendant, *Hamann v Ridge Tool Co*, 213 Mich App 252, 253; 539 NW2d 753 (1995), is inapposite. *Hamann* dealt with an issue that, at first blush, might seem somewhat similar to this one: whether a trial court should sanction a party by excluding testimony about inadvertently lost evidence. *Id*. at 254-259. But *Hamman*'s analysis of that issue occurred in the context of a civil case and was entirely unrelated to due process, particularly as it relates to criminal prosecutions. "The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases[.]" *Gerstein v Pugh*, 420 US 103, 125 n 27; 95 S Ct 854; 43 L Ed 2d 54 (1975). Consequently, procedures that apply in civil matters are often "inapposite and irrelevant in the wholly different context of the criminal justice system." See *id*. As the trial court correctly noted, *Youngblood* and its Michigan progeny govern this analysis, not *Hamann*.

whether counsel did, in fact, consult any expert witnesses, this claim of ineffective assistance necessarily fails. Defendant has failed to carry his burden of establishing the necessary factual predicate. See *Hoag*, 460 Mich at 6.

Moreover, the trial court did not abuse its discretion by denying defendant a *Ginther* hearing with regard to this claim. In the trial court, defendant supported his request for a *Ginther* hearing with an affidavit from Joseph Licavoli, "a materials science and engineering professor at Michigan Technical University, whose expertise is in the field of metallurgy and metal comparison." After noting that the decision whether to call an expert witness is a matter of trial strategy, *People v Bass*, 317 Mich App 241, 279; 893 NW2d 140 (2016), the trial court also correctly noted that a trial court's decision whether to admit expert testimony is reviewed for an abuse of discretion, *Unger*, 278 Mich App at 216. The trial court stated that, had defendant attempted to present Licavoli's proposed expert testimony at trial, the trial court would have ruled it inadmissible. The trial court reasoned that, given that the fence posts had been lost, Licavoli could not have offered reliable scientific testimony about whether the metal composition of the lost posts matched that of the "stubs" left in Jayne Field. The trial court further reasoned (1) that Licavoli's opinion regarding the scientific reliability of the police witnesses' lay opinion testimony (about the fence posts matching the stubs) was irrelevant, given that the police witnesses did not offer any *expert* opinions, and (2) that Licavoli's expert criticism of lay opinion testimony would have impermissibly invaded the province of the jury to judge witness credibility.

We agree with the trial court's reasoning in all respects. Neither Officer Benitez nor Sergeant Schmit was qualified as an expert by the trial court, and neither offered any expert opinions. Rather, those police witnesses only testified that, based on their personal perceptions, it appeared that the 10 fence posts in defendant's possession and the remaining stubs matched in color, diameter, shape, and in having been "freshly" cut. One does not need any special expertise to opine about such readily observed visual characteristics. Although an expert metallurgical inquiry might have been a more scientifically reliable method of determining whether there was an exact match, defendant cites no authority for the proposition that the mere possibility of expert testimony on a subject precludes lay witnesses from offering opinions that are rationally based on their visual perceptions. Indeed, any such rule would run counter to MRE 701, which expressly recognizes that a lay witness may offer "testimony in the form of opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Accordingly, the trial court properly concluded that the challenged police testimony was admissible as lay opinion testimony under MRE 701. See, e.g., *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). For that reason, counsel did not perform ineffectively by failing to object to such testimony.

Moreover, we agree with the trial court's conclusion that Licavoli's proposed expert criticism of the officers' lay opinions would have impermissibly invaded the province of the jury. See generally *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). At a minimum, such criticism would have lacked any legal relevance. See *id.* Consequently,

Licavoli's proposed expert testimony would not have been admissible at trial, and defendant's trial counsel could not have performed ineffectively by failing to offer it. See *Henry (After Remand)*, 305 Mich App at 141.[3]

Defendant next argues that his trial counsel should have objected to the introduction of evidence that more than 10 fence posts had been removed from Jayne Field, arguing that this was improper "other acts" evidence under MRE 404(b)(1). Even assuming that such evidence was improper—which is a highly dubious assumption—defendant fails to recognize that "declining to raise objections . . . can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242. The defense theory of the case was premised, in part, on defendant's testimony that he had been to Jayne Field numerous times to play baseball since 2011 and that the baseball diamonds had been in "horrible" condition, with numerous fence posts missing. In other words, the defense relied on the fact that fence posts had been removed at times before the date of defendant's arrest to support the defense theory that the missing fence posts at issue might have been removed by someone other than defendant at some earlier date. Defendant has failed to rebut the strong presumption that counsel's decision not to object to this evidence was both strategic and effective.

Nor has defendant offered any rationale why a *Ginther* hearing was necessary to develop the factual basis for this claim. Thus, defendant has failed to demonstrate that the trial court abused its discretion by denying him a *Ginther* hearing with regard to this claim of ineffective assistance.

Defendant's next contention is that his trial counsel should have requested instructions on several necessarily included lesser offenses. Defendant is correct that several misdemeanor variations of malicious destruction of property, based on lesser dollar amounts of destroyed property, are necessarily included offenses of the felony for which defendant was convicted here: malicious destruction of personal property valued at $1,000 or more but less than $20,000. See MCL 750.377a; *People v White*, 469 Mich 944; 670 NW2d 672 (2003). However, defendant has

---

[3] Furthermore, even assuming, arguendo, that Licavoli's proposed expert testimony would have been admissible at trial, on this record there is no reasonable probability that such testimony would have altered the outcome of these proceedings. The challenged police testimony was *consistent* with defendant's testimony. The police testified that the 10 fence posts in defendant's possession looked freshly cut; likewise, defendant testified that they would have been cut at Smith Fence just the day before he was arrested. Moreover, defendant agreed with the police witnesses that the 10 fence posts in his possession had the same diameter as those in Jayne Field and facially appeared the same, explaining, however, that in his lay opinion (he too was never certified as an expert) the 10 fence posts were "SS20" posts while those in Jayne Field were either "SS30" OR "SS40." Given that the challenged police testimony was largely consistent with defendant's testimony and the defense theory of the case, defendant has not shown a reasonable probability that, but for counsel's failure to admit expert testimony like Licavoli's, the outcome here would have been different.

failed to rebut the strong presumption that trial counsel acted strategically and effectively by not requesting jury instructions concerning those necessarily included misdemeanors.

As recognized by the pertinent model jury instruction, M Crim JI 32.2, one element of any malicious destruction of property offense under MCL 750.377a is "the extent of the damage[.]" See also *People v Ewing*, 127 Mich App 582, 585; 339 NW2d 228 (1983). Under MCL 750.377a, the only change in this extent-of-damage element from offense to offense is the requisite dollar amount. Nevertheless, M Crim JI 32.2 states that, with regard to the extent of damage, the trial court should "[c]hoose only *one*" of the listed dollar ranges "*unless* instructing on lesser offenses[.]" (Emphasis added.) Because defense counsel did not request instructions regarding the necessarily included lesser offenses, the jury was instructed that to convict defendant, it had to find (among other things) that the prosecution had proven, beyond a reasonable doubt, "that the extent of the damage was one thousand dollars or more, but less than twenty thousand dollars." Although the jury was not given an option to convict defendant of one of the lesser included misdemeanors, it would have been inconsistent with the defense theory to present lesser offense options to the jury. The defense theory in the case was that defendant was completely innocent of any wrongdoing. Defendant denied any involvement in removing the fence posts at issue from Jayne Field. Under the circumstances, trial counsel's decision not to request lesser offense instructions was a matter of trial strategy, and defendant has not overcome the presumption of sound strategy.

Finally, defendant argues that his trial counsel performed ineffectively by failing to object to the amount of restitution ordered. Defendant misstates the record. At sentencing, the prosecution requested an order of more than $17,000 in restitution, arguing that defendant should have been ordered to pay the cost of replacing *all* of the missing fencing around the baseball diamond. Defense counsel *did* object, arguing that the proper amount of restitution was $3,910 (i.e., the estimated cost of replacing the 10 fence posts, the concrete maintenance strip in which they were anchored, and the concrete footings). The trial court agreed, ordering restitution of $3,910.

Because evidence at trial supported a proper restitution amount of at least $3,910, defense counsel could not have performed ineffectively by failing to advocate for an even lower figure. See *Henry (After Remand)*, 305 Mich App at 141.

In pertinent part, MCL 780.766 provides:

(2) Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate. . . .

(3) If a crime results in damage to or loss or destruction of property of a victim of the crime or results in the seizure or impoundment of property of a victim of the crime, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

(a) Return the property to the owner of the property or to a person designated by the owner.

(b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:

(*i*) The fair market value of the property on the date of the damage, loss, or destruction. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

(*ii*) The fair market value of the property on the date of sentencing. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

(c) Pay the costs of the seizure or impoundment, or both.

Under MCL 780.767(4), "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney." Restitution should be in an amount that will "make the victim whole." *People v Bryant*, 319 Mich App 207, 212; 900 NW2d 360 (2017).

In this instance, defendant's return of the fence posts was not adequate to make Detroit whole, and defendant's payment of the posts' fair market value also would have been inadequate. The prosecution presented evidence that it would cost $3,910 to replace the 10 "fence posts and the footings and the concrete maintenance strip," and defendant presented no evidence to the contrary. Therefore, we agree with the trial court that the prosecution proved, by at least a preponderance of the evidence, that the proper amount of restitution was $3,910 or more. Consequently, any objection to that amount would have been futile.

Finally, there was no need for a *Ginther* hearing to develop a factual record for this claim of ineffective assistance. Because the proper restitution figure was determined here by reference to the evidence presented at trial, the existing record was adequate to decide whether counsel should have objected. Thus, the trial court did not abuse its discretion by refusing to grant a *Ginther* hearing concerning this issue.

Next, to the extent that defendant separately challenges the amount of restitution ordered by the trial court, defendant waived any such claim by expressly requesting that the trial court order the amount of restitution that it did. The prosecution requested restitution of more than $17,000, representing the cost of replacing *all* of the missing fencing around the baseball diamond. Defense counsel argued that the proper amount should be limited to $3,910, representing the cost of replacing only the 10 fence posts found in his possession. The trial court agreed with defendant and ordered the lower amount. By specifically requesting the amount of

restitution that was subsequently ordered, defendant's trial counsel waived any claim that that amount was improper. See *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003). A "waiver extinguishes any error" and precludes appellate review. *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000).

Defendant also raises a conclusory challenge to the sufficiency of the evidence in support of his conviction. Defendant presents no argument concerning the elements of malicious destruction of personal property, and he fails to cite any supporting legal authority—even with regard to the standard of review—in support of his argument. As such, this issue may be deemed abandoned. See *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016). Regardless, defendant's sufficiency-of-the-evidence challenge is substantively unpersuasive. Notably, defendant does not contend that sufficient evidence of his guilt was not introduced at trial. Rather, he contends that this Court should not consider evidence that was "improperly" admitted, and that without such evidence, there was insufficient evidence to sustain his conviction. As explained previously, however, defendant has not established that the opinion testimony of the police witnesses, or any other evidence, was improperly admitted. Furthermore, in reviewing a challenge to the sufficiency of the evidence, this Court examines "all the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the prosecution proved the essential elements of the crime beyond a reasonable doubt." *People v Hicks*, 259 Mich App 518, 522; 675 NW2d 599 (2003). Contrary to defendant's arguments on appeal, this Court cannot selectively discount record evidence when evaluating the sufficiency of the evidence. Because defendant has not shown that any evidence was improperly admitted, and he does not otherwise argue that the evidence in introduced at trial was insufficient to establish his guilt, we reject this claim of error.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood