BRENNER v KOLK

Docket No. 193121. Submitted August 6, 1997, at Grand Rapids. Decided October 24, 1997, at 9:15 A.M.

Sherri Brenner brought an action in the Newaygo Circuit Court against Bryan and Margaret Kolk, alleging that she was injured in an accident while driving the defendants' automobile because of their negligence in lending her an automobile with a defective seat belt and worn tires and in not warning her about the seat belt and the tires. The defendants moved for summary disposition, arguing that they owed no duty of care to the plaintiff or that the action should be dismissed because the plaintiff failed to preserve physical evidence in support of her claim while the automobile was stored for months in her barn until it was towed to a junkyard and demolished. The court, Anthony A. Monton, J., while ruling that liability would be established upon proof that the defendants lent an automobile that they knew or should have known had a defective seat belt and worn tires, dismissed the action because the plaintiff failed to preserve crucial evidence relating to the seat belt and the tires. The plaintiff appealed.

The Court of Appeals *held*:

1. A trial court's inherent powers to manage its affairs so as to achieve the orderly and expeditious disposition of cases includes the power to make discovery and evidentiary rulings conducive to the conduct of fair and orderly trials. In this case, although sanctions under MCR 2.313 are unavailable because of the absence of a discovery order, much less a violation of a discovery order, sanctions can be imposed pursuant to the trial court's inherent powers.

2. In a case involving the failure of a party to preserve evidence, a trial court properly exercises discretion under its inherent powers when it carefully fashions a sanction that denies the party the fruits of its misconduct, but that does not interfere with the party's right to produce relevant evidence. An appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence.

3. This case must be remanded because dismissal of the action as a sanction for the plaintiff's failure to preserve evidence is not

supported by the record developed thus far. On remand, the trial court, at its discretion, may exclude evidence that the defendants have had no opportunity to rebut because of the plaintiff's failure to preserve evidence, or may conclude that the appropriate remedy is to instruct the jury that it may draw an adverse inference against the plaintiff. After making its evidentiary ruling, the trial court may entertain a motion for summary disposition, which may be granted if the court concludes that the exclusion of evidence would leave the plaintiff unable to prove her claim.

Affirmed in part, reversed in part, and remanded.

EVIDENCE — PARTIES' FAILURE TO PRESERVE EVIDENCE — SANCTIONS.

A trial court has the inherent power to impose a sanction for a litigant's failure to preserve evidence where no discovery order applies; an appropriate sanction may be the exclusion of evidence that the other litigant cannot rebut because of the offending litigant's failure to preserve evidence or an instruction to the jury that it may draw an inference adverse to the offending litigant from the absence of the evidence not preserved.

*McCroskey, Feldman, Cochrane & Brock, P.C.* (by *John P. Halloran*), for the plaintiff.

*Beusse Holmes, P.C.* (by *Elizabeth S. Holmes*), for the defendants.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and JANSEN, JJ.

CAVANAGH, P.J. Sherri Brenner (hereafter plaintiff) appeals as of right the trial court order granting defendants Bryan and Margaret Kolk's motion for summary disposition in this negligence action. We affirm in part, reverse in part, and remand for further proceedings.

In 1992, plaintiff, her husband, Raymond Brenner, and defendants were friends and socialized together on a regular basis. Brenner and Bryan Kolk worked together as deputy sheriffs with the Newaygo County Sheriff's Department.

On the evening of March 16, 1992, plaintiff borrowed a 1977 Chevrolet Impala from defendants. Early the next morning, plaintiff was involved in a collision while driving defendants' car in adverse weather and allegedly sustained injuries. Defendants' car, which was damaged beyond repair, was towed to the Brenners' pole barn, where it remained for four or five months.

Plaintiff alleges that the shoulder belt did not catch properly during the accident and instead remained "real loose." Plaintiff has provided the affidavit of Rosslee Davison, who assisted her at the scene of the accident, to corroborate her assertion that the shoulder harness was loose.

According to plaintiff, she discussed the accident with Margaret Kolk several weeks after it occurred. In the course of the conversation, she told Margaret Kolk that the shoulder portion of the seat belt had not operated properly during the accident. Margaret Kolk then responded that the seat belt had malfunctioned on several prior occasions.

In an affidavit, Brenner corroborated plaintiff's account of this discussion. However, Brenner testified at deposition that he tested the seat belt while the car was in the pole barn and could not make it malfunction. Plaintiff's response to this experiment was that the seat belt had not worked at the time of the accident.

Approximately one month after the accident, while in her pole barn, plaintiff noticed that the tires on defendants' car were bald. Brenner testified that after plaintiff mentioned this to him, he examined the tires and saw no tread pattern on them. Plaintiff also submitted affidavits from two neighbors who saw the car

in her barn and observed that the tires were almost bald.

In August or September of 1992, after Bryan Kolk's insurance claim was settled, the insurance company took title to the vehicle and arranged to have it towed to the junkyard. Soon after, Brenner went to the junkyard and removed the seat belt and part of its mechanism because plaintiff was contemplating suing General Motors, the manufacturer of the vehicle. Brenner did not recover the car door or the portion of the seat-belt apparatus attached to it. The car was subsequently demolished.

Plaintiff testified that she first contemplated suing defendants after the conversation in which Margaret Kolk allegedly told her that the seat belt had failed on two prior occasions. Brenner testified that plaintiff had wanted to sue defendants, but he had opposed the lawsuit because of his close friendship with Bryan Kolk and because the latter was a fellow officer. Brenner told plaintiff that he would leave her if she sued defendants.

Eventually, after realizing that plaintiff had not fully recovered from her injuries, Brenner abandoned his opposition to the lawsuit. On February 17, 1995, one month before the expiration of the statutory period of limitation, plaintiff filed a complaint alleging that defendants loaned her a car that had a defective seat belt and badly worn tires. Plaintiff asserted that defendants were liable in negligence for her serious impairment of bodily function and other injuries as a

result of the conditions of the seat belt and the tires and the defendants' failure to warn of them.[1]

The night before defendants were to be served, Brenner went to their house and told them of the imminent lawsuit. Defendants have testified, and plaintiff has presented no evidence contradicting their claim, that they first learned that plaintiff was contemplating a lawsuit at that time.

At deposition, Bryan Kolk testified that he had no knowledge of any problems with the seat belt before the accident. He stated that, about eighteen months before plaintiff's accident, he had been involved in a front-end collision while driving the vehicle in question and the seat belt had worked properly. After this incident, in order to satisfy himself that the seat belt had not been adversely affected by the collision, he tested it by accelerating and then sharply applying the brakes and found no malfunction. Bryan Kolk stated that the tires had been about one year old, but he did not have any documentation on the purchase and did not recall what brand they were. He stated that he would have checked the condition of the tires when he did maintenance work on the car.

Margaret Kolk stated at her deposition that she had never had a problem with the seat belt and had not told plaintiff that she had. On the basis of having "eyeballed" the tires when she would get gas, she opined that the tires had been in adequate condition. At the time of the accident, the tires were about one year old. She had been the primary driver of the vehicle and had used it mainly to commute two or three

---

[1] General Motors was also named as a defendant in the complaint, but was dismissed with prejudice pursuant to the parties' stipulation on September 5, 1995.

days a week to a school located thirty or forty miles from her home.

Defendants submitted an affidavit of State Trooper Ron VanderMolen, who had investigated plaintiff's accident. VanderMolen averred that at the time of the accident he had inspected the vehicle and found that the tires had adequate tread. VanderMolen also stated that he had tested the driver's restraint system and found it to be in operable condition.

On December 15, 1995, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendants argued that plaintiff had failed to establish a genuine issue of material fact regarding whether defendants owed any duty to her. In the alternative, defendants sought either dismissal of the action in its entirety or an order excluding evidence of the condition of the tires and the seat belt because plaintiff had failed to preserve the vehicle in question.

At a hearing on February 13, 1996, the trial court ruled in favor of plaintiff with regard to the question of duty. The trial court held that defendants would have breached a duty to plaintiff if they loaned her a car that they knew or should have known had bald tires and a defective seat belt. However, the trial court nevertheless dismissed the case because plaintiff had failed to preserve crucial evidence. The trial court considered the alternative of instructing the jury, pursuant to SJI2d 6.01, that it could infer that the evidence would have been adverse to plaintiff, but rejected that option because it concluded that plaintiff would then be unable to make a prima facie case.

On appeal, plaintiff argues that the trial court erred in finding that her failure to preserve evidence

required dismissal of the case. We affirm the trial court's finding that it was proper to impose a sanction on plaintiff for failure to preserve evidence. However, we remand this matter to the trial court for further consideration of the appropriate sanction.

As an initial matter, we note that the trial court dismissed this case by granting defendants' motion for summary disposition. The trial court did not specify the court rule under which it granted the motion, but it is clear from the transcript of the hearing that the court granted summary disposition as a sanction for plaintiff's failure to preserve evidence. We conclude that the trial court's method of dismissing this case was incorrect as a matter of law because MCR 2.116 is not a rule of sanction. Summary disposition is proper only when the pleadings show that a party is entitled to judgment as a matter of law or if the affidavits or other proofs show no genuine issue of material fact. See MCR 2.116(I)(1).

We also conclude that the trial court erred in concluding that the practical effect of reading SJI2d 6.01 would be a dismissal of plaintiff's case. SJI2d 6.01 states that a jury "*may* infer that the evidence would have been adverse to" plaintiff.[2] Because "may" is a permissive term, the jury would not have been

---

[2] SJI2d 6.01(a) provides:

The [*plaintiff / defendant*] in this case has not offered [*the testimony of* _____ / _____ ]. As this evidence was
           name        Identify exhibit
under the control of the [*plaintiff / defendant*] and could have been produced by [*him / her*], and no reasonable excuse for the [*plaintiff's / defendant's*] failure to produce the evidence was given, you may infer that the evidence would have been adverse to the [*plaintiff / defendant*].

required to make such an adverse inference. See *Jordan v Jarvis*, 200 Mich App 445, 451; 505 NW2d 279 (1993).

Moreover, we believe that the application of SJI2d 6.01 to this case is questionable. This Court has held, in the context of a missing witness, that the instruction is not applicable when the witness is equally available to either party. See *Isagholian v Transamerica Ins Corp*, 208 Mich App 9, 15-16; 527 NW2d 13 (1994). The facts of this case indicate that the vehicle was accessible to all the parties. The car was stored in plaintiff's pole barn for several months after the accident. However, it remained the property of Bryan Kolk until the title transferred to his insurer, and there is no evidence that plaintiff or Brenner would have denied defendants access to it. The difficulty in this case arises because plaintiff neither preserved the evidence nor informed defendants that she was contemplating a lawsuit.

We therefore turn our attention to the proper analysis for a trial court to apply when, although no discovery order has been violated, a party has failed to preserve vital evidence.[3] This Court recently decided a case involving the accidental loss of evidence in *Hamann v Ridge Tool Co*, 213 Mich App 252; 539 NW2d 753 (1995). In *Hamann*, the plaintiff, who had

---

[3] Plaintiff relies on *Clark v Lawrence Baking Co*, 240 Mich 352; 215 NW 337 (1927), a case decided before the adoption of the Michigan Rules of Evidence. In *Clark*, the trial court allowed the plaintiff to present testimony that deputy sheriffs had matched pieces of glass found in the road to the glass remaining in the headlight of the defendant's truck. At the time of trial, the glass could not be found. The Supreme Court upheld the trial court's ruling. *Id.* at 356. We find *Clark* to be inapplicable to the present case because the cause of the disappearance of the glass in *Clark* was apparently unknown, and there was no indication that the plaintiff was culpable for failing to preserve it.

been working on a bridge project, fell after a cable hoist purchased from the defendant broke. The pieces of the hoist were lost while in the custody of one of the plaintiff's experts, before the defendant had an opportunity to examine them. This Court held that the trial court erred in permitting the plaintiff's expert to testify regarding the broken hoist. The evidence should have been excluded because, regardless of whether the evidence had been lost intentionally or accidentally, the defendant suffered unfair prejudice because it was unable to challenge or respond to the evidence. *Id.* at 258.

The *Hamann* Court did not rely on any evidentiary rule or rule of civil procedure in its decision. However, it looked to two federal cases addressing situations where one party was unable to have experts evaluate evidence before it was negligently or accidentally lost by the other party. See *Dillon v Nissan Motor Co, Ltd*, 986 F2d 263 (CA 8, 1993); *Unigard Security Ins Co v Lakewood Engineering & Mfg Corp*, 982 F2d 363 (CA 9, 1992). In both *Dillon* and *Unigard*, the courts held that the district courts properly excluded the plaintiffs' expert testimony when the products that the plaintiffs claimed were defective were destroyed before the defendants could examine them. See *Dillon, supra* at 268; *Unigard, supra* at 368. The *Unigard* court noted that the district court did not abuse its discretion in determining that a rebuttable presumption against the plaintiff would have been insufficient to cure the prejudice. *Id.* at 368-369.

In both *Dillon* and *Unigard*, the courts reasoned that the provision for sanctions in FR Civ P 37, the federal discovery rule, does not apply when evidence

has been destroyed but no violation of a discovery order has occurred. Instead, the courts looked to the district court's inherent powers as the basis for the imposition of sanctions. See *Dillon, supra* at 266-267; *Unigard, supra* at 367-368. The phrase "inherent powers" is used to refer to powers included within the scope of a court's jurisdiction and that a court possesses irrespective of specific grant by constitution or legislation. 20 Am Jur 2d, Courts, § 43, p 363. The Ninth Circuit Court of Appeals explained:

> We find . . . that Unigard's evidence was properly excluded as an exercise of the court's inherent powers. Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."
>
> This circuit has recognized as part of a district court's inherent powers the "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion . . . lies the power . . . to exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party." [*Unigard, supra* at 368 (citations omitted).]

MCR 2.313 permits the court to impose a sanction for failure to comply with a discovery order.[4] How-

---

[4] MCR 2.313(B) provides:

(1) Sanctions by Court Where Deposition Is Taken. If a deponent fails to be sworn or to answer a question after being directed to do so by a court in the county or district in which the deposition is being taken, the failure may be considered a contempt of that court.

(2) Sanctions by Court in Which Action Is Pending. If a party or an officer, director, or managing agent of a party, or a person designated under MCR 2.306(B)(5) or 2.307(A)(1) to testify on behalf of a party, fails to obey an order to provide or permit discovery, including an order entered under subrule (A) of this rule or under

ever, like the *Dillon* and *Unigard* courts, we find that the court rule is simply not applicable in the absence of a discovery order. Accordingly, we now consider whether a trial court in Michigan may sanction parties for the loss or destruction of evidence as an exercise of its inherent powers.

Michigan courts have recognized that courts have the inherent power to take a number of various actions.[5] In addition, without specifically mentioning

---

MCR 2.311, the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

(a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party;

(d) in lieu of or in addition to the foregoing orders, an order treating as a contempt of court the failure to obey an order, except an order to submit to a physical or mental examination;

(e) where a party has failed to comply with an order under MCR 2.311(A) requiring the party to produce another for examination, such orders as are listed in subrules (B)(2)(a), (b), and (c), unless the party failing to comply shows that he or she is unable to produce such person for examination.

In lieu of or in addition to the foregoing orders, the court shall require the party failing to obey the order or the attorney advising the party, or both, to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

[5] See, e.g., *Banta v Serban*, 370 Mich 367, 368; 121 NW2d 854 (1963) (court has inherent power to control the movement of cases on its docket); *In re Scott*, 342 Mich 614, 618; 71 NW2d 71 (1955) (courts have inherent power to punish for contempt); *Ayres v Hadaway*, 303 Mich 589, 597; 6 NW2d 905 (1942) (Supreme Court has inherent power to regulate

the inherent-power doctrine, this Court recently recognized a court's authority to sanction litigant misconduct, even when there is no statute or court rule addressing the particular form of misconduct, based on a court's fundamental interest in protecting its integrity and that of the judicial system. See *Cummings v Wayne Co*, 210 Mich App 249, 251-252; 533 NW2d 13 (1995) (affirming the trial court's dismissal of the case after the plaintiff was found to have attempted to obtain favorable testimony from witnesses through death threats and vandalism).

In cases involving the loss or destruction of evidence, a court must be able to make such rulings as necessary to promote fairness and justice. To deny the courts the power to sanction a party in such circumstances would only encourage unscrupulous parties to destroy damaging evidence before a court order has been issued. Furthermore, regardless of whether evidence is lost as the result of a deliberate act or simple negligence, the other party is unfairly prejudiced because it is unable to challenge or respond to the evidence even when no discovery order has been violated. See *Hamann, supra.* We hold, therefore, that the trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation has commenced.

An exercise of the court's "inherent power" may be disturbed only upon a finding that there has been a clear abuse of discretion. *In re Estate of Jones*, 115

---

the qualifications of persons permitted to practice law in Michigan); *People v Jackson*, 178 Mich App 62, 68-69; 443 NW2d 423 (1989) (courts have the inherent power to direct a party to file a brief).

Mich App 600, 602; 322 NW2d 311 (1982). We find that, in a case involving the failure of a party to preserve evidence, a trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence. See *Lewis v Telephone Employees Credit Union*, 87 F3d 1537, 1557-1558 (CA 9, 1996). An appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party[6] or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence.[7]

In the present case, the trial court found that plaintiff had seriously considered litigation during the relevant period but had decided not to pursue legal remedies because of the personal problems that it would create for her. By the time plaintiff changed her mind, key evidence had been destroyed. The trial court concluded that, under the circumstances, a sanction was warranted.

Plaintiff argues that she did not destroy or lose any evidence.[8] While this is technically true, plaintiff nev-

---

[6] See *Hamann, supra; American Family Ins Co v Village Pontiac GMC, Inc*, 223 Ill App 3d 624, 628; 166 Ill Dec 93; 585 NE2d 1115 (1982).

[7] See *Glover v BIC Corp*, 6 F3d 1318, 1329 (CA 9, 1993).

[8] Plaintiff also contends that she did not have control over the vehicle. However, we find this argument to be without merit. As the trial court stated:

For the Brenners to argue that they did not have control over the vehicle is really a strange interpretation of the facts. It is clear that the vehicle was stored in their pole barn for four to five months after the accident and the Brenners, at that time, controlled access to it.

Further, the Brenners felt that they had sufficient control over the vehicle to even go to the vehicle and remove a portion of it per-

ertheless failed to preserve crucial evidence. Even when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action. *Fire Ins Exchange v Zenith Radio Corp*, 103 Nev 648, 651; 747 P2d 911 (1987). In the present case, plaintiff failed to preserve the tires and seat belt, despite having contemplated a lawsuit, during the four or five months that the vehicle was in her pole barn. Plaintiff's assertion that her failure to preserve evidence was in response to her husband's persuasion does not excuse her failure to preserve the evidence because, regardless of plaintiff's motivation, her actions were intentional.[9] At a minimum, plaintiff should have given defendants notice that they should preserve or inspect the tires and seat belt because she was contemplating a lawsuit.

Defendants clearly have been prejudiced by plaintiff's actions. During the months that the vehicle was stored in her pole barn, plaintiff was able to accumulate witnesses in support of her contention that the tires were bald. However, as the trial court noted, defendants are left with only casual observations of the vehicle and possibly the testimony of Trooper VanderMolen that he did not notice problems with the tires when he investigated the accident.[10] While the

---

taining to the seat belt after the car had been moved to the junk yard.

[9] See *People v Hoffman*, 225 Mich App 103, 110; 570 NW2d 146 (1997) (distinguishing between "motive" and "intent").

[10] In opposition to defendants' motion for summary disposition, plaintiff submitted an affidavit in which Brenner stated that he spoke with Trooper VanderMolen in March 1995, at which time the latter stated that he did not recall the condition of the tires at the time of the accident.

record shows that defendants would not be entirely unable to rebut plaintiff's witnesses, they would still be placed in an unfair position because the issue would turn on the credibility of the witnesses, and they could not obtain additional witnesses to counter plaintiff's witnesses. In addition, although plaintiff dismisses the importance of expert testimony by stating that she does not plan to present any, defendants have been denied the opportunity to have experts examine both the tires and seat belt to determine what role, if any, they played in the accident. Finally, the preservation of the tires would have eliminated the jury's need to evaluate credibility or assess what each witness meant by a "bald" or "almost bald" tire because the jurors themselves could look at the tires to determine whether the tread was adequate.

We conclude that the trial court did not abuse its discretion in determining that a sanction against plaintiff would be appropriate. However, our review of the specific sanction imposed by the trial court is hampered somewhat because, as already discussed, the procedural basis for its decision was flawed. If the trial court intended a sanction of dismissal, we find that the trial court's decision was an abuse of discretion because the record does not demonstrate the egregious conduct that would warrant such an extreme measure. Dismissal is a drastic step that should be taken cautiously. Before imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper. *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). Before dismissing the case, the trial court should have considered lesser sanctions,

including the exclusion of evidence that is unfairly prejudicial to defendants because of plaintiff's failure to preserve the tires and seat belt. On the other hand, if the trial court meant to exclude evidence and then grant summary disposition because plaintiff could not make a prima facie case, the trial court's decision is deficient because the record does not reflect that it carefully fashioned the sanction to deny plaintiff the fruits of her misconduct. We therefore remand this case to the trial court so that it may determine an appropriate sanction in light of the standard provided in this opinion.

On remand, the trial court should rule on the admissibility of the specific evidence challenged by defendants. The trial court may, in its discretion, properly exclude evidence that defendants have had no opportunity to rebut because of plaintiff's failure to preserve evidence.[11] In the alternative the court may conclude, as plaintiff maintains, that an adequate remedy would be to instruct the jury that it could draw an adverse inference against plaintiff from the destruction of the evidence.[12] See *Glover v BIC Corp*,

---

[11] We note that MRE 403 would provide an alternative basis for excluding any evidence. MRE 403 gives a trial court discretion to exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice. The fundamental goals of MRE 403 are accuracy and fairness. *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995).

[12] Under the circumstances, it would not be an abuse of discretion for the trial court to exclude the testimony of plaintiff's witnesses that the tires were "bald." It is questionable, however, whether the testimony of plaintiff and Davison that the shoulder belt was "loose" at the time of the accident could be viewed as the fruit of plaintiff's failure to preserve the entire seat belt mechanism. Furthermore, Margaret Kolk can rebut plaintiff's allegation that she told plaintiff that she had previously had problems with the seat belt simply by presenting her testimony that she did not make such a statement. While defendants' position might have been aided by having an expert examine the restraint system, on the basis of Brenner's testimony regarding his test of the seat belt, it is uncertain

6 F3d 1318, 1329 (CA 9, 1993). After making its evidentiary decisions, the trial court may then entertain a motion for summary disposition. If the trial court determines that exclusion of certain evidence would be proper, and the practical effect is that plaintiff is unable to prove her negligence claim, a grant of summary disposition would be appropriate at that time.[13]

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

---

whether the seat belt would have been in the "loose" condition at the time defendants' expert inspected it. Thus, a jury instruction permitting an adverse inference may be an adequate sanction with regard to plaintiff's seat belt claim.

[13] A dispute regarding an issue of fact must be established by evidence that would be admissible at trial. *SSC Associates Ltd Partnership v General Retirement System of the City of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991).