*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JONATHON EMMENDORFER,

       Plaintiff-Appellant,

v

PIONEER STATE MUTUAL INSURANCE
COMPANY,

       Defendant-Appellee.

UNPUBLISHED
July 2, 2020

No. 347365
Wayne Circuit Court
LC No. 17-011359-NF

Before: STEPHENS, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant dismissal of plaintiff's claims for spoliation of evidence and alternatively summary disposition under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND FACTS

Plaintiff owned a motorized bicycle that he purchased from a friend or co-worker who had installed a gasoline combustion engine on it using an aftermarket kit. Plaintiff used his motorized bicycle for transportation around town, to and from work, and to the store because he had a suspended driver's license. He put about 950 miles on the motorized bicycle in the three months that he owned it. On August 29, 2016, while riding his motorized bicycle home after work on a public highway, plaintiff drove into an intersection and struck the rear driver's side of an automobile and sustained serious injuries. Plaintiff had no insurance for his motorized bicycle or other coverage under the no-fault act,[1] so he looked to defendant, the no-fault insurer of the automobile involved in the accident, to provide personal injury protection (PIP) benefits for his accident-related injuries.

---

[1] MCL 500.3101 *et seq.*

Before this litigation commenced defendant requested to inspect plaintiff's motorized bicycle as part of its investigation into his claim for PIP benefits and cautioned plaintiff to refrain from altering or discarding the evidence before its inspection. Defendant sought to ascertain the size of the motor, the motorized bicycle's maximum speed, whether its operation required changing gears, and other features pertinent to determination of its categorization as a motorcycle, a moped, or an off-road vehicle (ORV) under the no-fault act. The vehicle's categorization had significance for determination of defendant's liability for plaintiff's PIP benefits because the no-fault act disqualifies an uninsured motorcycle owner injured in a motor vehicle accident from receiving PIP benefits; whereas, a moped or an ORV owner is not required to carry insurance under the no-fault act, yet remains entitled to receive PIP benefits for injuries sustained in an accident involving a motor vehicle.

Defendant also sought inspection of plaintiff's motorized bicycle after plaintiff commenced the litigation. Plaintiff's counsel objected to defendant's request on the ground that plaintiff was a pedestrian when struck by defendant's insured. Plaintiff also responded to defendant's discovery requests regarding the nature of the vehicle he operated at the time of the accident by asserting that he merely rode a bicycle.

Unknown to defendant, despite its inspection requests, plaintiff disposed of the bicycle and the motor. He first discarded the bicycle frame as no longer usable shortly after the accident, but he retained the motor and installed it and other parts on a new bicycle which he used for several months. He discarded the motor after it ceased functioning.

Defendant argued to the trial court that, without access to the motorized bicycle, it had no way to investigate whether it qualified as an uninsured motorcycle, a moped, or an ORV under the no-fault act to determine its liability for plaintiff's PIP benefits. Plaintiff maintained that the motorized bicycle could not be categorized as a motorcycle and contended that it could be considered either a moped or an ORV exempt from no-fault insurance obligations, thereby entitling him to PIP benefits. Plaintiff testified at his deposition that his motorized bicycle had a 49 cc (cubic centimeters piston displacement) motor with a single gear incapable of reaching a speed greater than 30 miles per hour.[2] Plaintiff further maintained that, even if his motorized bicycle could be classified as a motorcycle, it was an ORV as a matter of law, and therefore, no need existed to examine it to ascertain the size of its motor or its maximum speed. A police officer testified that he observed plaintiff riding "a ten speed mountain bike with a small motorized gas engine on it" around town which caused him to raise the issue with his superiors whether plaintiff broke the law by driving a motorcycle without a valid license. His chief believed that the motor was not "big enough" to cite plaintiff under the Michigan Vehicle Code (MVC).[3] The police, however, never inspected plaintiff's motorized bicycle to determine the size of its motor. The police officer did not testify regarding the vehicle's speed or any of its other features. Plaintiff also relied on a page from the bicycle's manufacturer's website that indicated that its mountain

---

[2] MCL 257.32b defines a "moped" as a two- or three-wheeled vehicle equipped with a single geared nonelectric motor having less than 100 cc piston displacement that cannot exceed 30 miles per hour on a level surface.

[3] MCL 257.1 *et seq.*

bikes had features that provided the rider an advantage in off-road conditions. Although photographs were taken at the accident scene, they lacked clarity and did not reveal the features of the bicycle in any detail to permit determination of its categorization for no-fault purposes.

After discovering that plaintiff disposed of his motorized bicycle months before he commenced this litigation, defendant moved for dismissal of plaintiff's case as a sanction for spoliation of evidence. Defendant complained that plaintiff unfairly deprived it of the opportunity to investigate plaintiff's claim that his motorized bicycle was an ORV or a moped, as opposed to an uninsured motorcycle.

The trial court concluded that plaintiff's conduct in disposing of the motorized bicycle while knowing its relevance to potential litigation, and after defendant asked to inspect it, amounted to egregious conduct that unfairly deprived defendant of the opportunity to investigate and defend plaintiff's claim for PIP benefits. The trial court reasoned that the motorized bicycle itself offered the only evidence other than plaintiff's testimony to establish whether it constituted an uninsured motorcycle, a moped, or an ORV, depriving defendant of any way to challenge or respond to plaintiff's testimony. Alternatively, the trial court concluded that, if it did not dismiss the case, it would impose a lesser sanction upon plaintiff by precluding him from testifying regarding the features of the motorized bicycle. It reasoned that if it did so, granting defendant summary disposition under MCR 2.116(C)(10) would be required because, in the absence of plaintiff's testimony, no evidence established that his motorized bicycle was a moped or an ORV, and plaintiff could not prove his entitlement to no-fault PIP benefits.

## II. STANDARDS OF REVIEW

We review a trial court's exercise of its inherent power to impose sanctions for failing to preserve evidence for an abuse of discretion. *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 211; 659 NW2d 684 (2002). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). This standard "acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citation omitted). Accordingly, if "the court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id.* (quotation marks and citation omitted).

We review de novo a trial court's decision on a motion for summary disposition. *Allstate Ins Co v Dep't of Mgt & Budget*, 259 Mich App 705, 709; 675 NW2d 857 (2003). "A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a claim." *Id.* (citation omitted). " 'Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id.* at 709-710, quoting *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). To the extent this issue requires statutory interpretation, it is subject to de novo review. *Id.* at 710.

III.  ANALYSIS

A.  IMPLICATIONS OF VEHICLE CATEGORIZATION UNDER THE NO-FAULT ACT

Plaintiff's entitlement to recovery of PIP benefits depended on the classification of his motorized bicycle, whether an ORV, a moped, or an uninsured motorcycle under the no-fault act. Under the no-fault act, a person who suffers bodily injury in an accident involving a motor vehicle is entitled to PIP benefits payable by an insurer regardless of fault.  MCL 500.3105(1) and (2); *Allstate*, 259 Mich App at 710.  Under MCL 500.3101(1), the owner or registrant of a motor vehicle must maintain PIP insurance.  The no-fault act defines "motor vehicle" as a vehicle "that is operated or designed for operation on a public highway by power other than muscular power and has more than 2 wheels."  MCL 500.3101(2)(h).[4]  An ORV or moped is not a "motor vehicle" under the no-fault act required to carry PIP insurance.  MCL 500.3101(1); MCL 500.3101(2)(h); MCL 324.81106 (an ORV is exempt from the provisions of the no-fault act); MCL 257.801e(1) (a moped is not required to be insured under the no-fault act).  Further, the owner or registrant of a "motorcycle" is required to carry liability insurance under the no-fault act, MCL 500.3103(1), and an uninsured owner or registrant of a motorcycle forfeits legal entitlement to PIP benefits.  MCL 500.3113(b).  But neither an ORV nor a moped is a "motorcycle" for this purpose.  MCL 500.3101(2)(f).  Although ORVs and mopeds are exempt from no-fault insurance obligations, an owner of an uninsured ORV or moped involved in an accident with a motor vehicle is not precluded from recovering PIP benefits.  See *Mich Millers Mut Ins Co v Farm Bureau Gen Ins Co*, 156 Mich App 823, 828-829; 402 NW2d 96 (1986).  Consequently, if plaintiff's motorized bicycle could be categorized as an ORV, as he argues, or a moped, he would not have been required to carry no-fault insurance and been entitled to PIP benefits for the injuries he sustained in the motor vehicle accident.  MCL 500.3105(1).  See *Nelson v Transamerica Ins Servs*, 441 Mich 508, 515-519; 495 NW2d 370 (1992).  But if plaintiff's motorized bicycle was categorized as an uninsured motorcycle, he lacked entitlement to receive PIP benefits.  MCL 500.3113(b).

The no-fault act specifically defines "motorcycle," "moped," and "off-road vehicle."  A "motorcycle" is "a vehicle that has a saddle or seat for the use of the rider, is designed to travel on not more than 3 wheels in contact with the ground, and is equipped with a motor that exceeds 50 cubic centimeters piston displacement," but does not include an ORV or a moped.  MCL 500.3101(2)(f).  Under MCL 500.3101(2)(e), the term "moped" is defined under the MVC's definition found in MCL 257.32b.  Thus, for purposes of the no-fault act, a moped is a two- or three-wheeled vehicle equipped with a single geared motor with less than 100 cc displacement that cannot exceed 30 miles per hour on a level surface.[5]  Under MCL 500.3101(2)(j) an "ORV" is "a

---

[4] The Legislature recently amended MCL 500.3101.  Former MCL 500.3101(2)(e) is now MCL 500.3101(3)(f), former 500.3101(2)(f) is now MCL 500.3101(3)(g), former MCL 500.3101(2)(h) is now MCL 500.3101(3)(i), and former MCL 500.3101(2)(j) is now MCL 500.3101(3)(k).  We refer herein to the version of the no-fault act in effect at the time of the accident.

[5] Provisions of the MVC require that a moped be equipped with a headlight, MCL 257.685(2), a rear stop lamp, MCL 257.697b, front and rear brakes, MCL 257.705(1)(b), a horn, MCL 257.706, a muffler, MCL 257.707, and a regular seat attached to the vehicle, MCL 257.658(1).

motor-driven recreation vehicle designed for off-road use and capable of cross-country travel without benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain" and an "ORV does not include a vehicle described in this subdivision that is registered for use upon a public highway and has the security described in section 3101 or 3103 in effect." The no-fault act precludes PIP coverage in connection with uninsured ORVs unless the accident involved a motor vehicle.

## B. NO-FAULT CATEGORIZATION OF PLAINTIFF'S VEHICLE

Plaintiff first claims that his motorized bicycle was an ORV, as a matter of law, which rendered irrelevant the size of its motor, its maximum speed, or whether its operation involved changing gears. Plaintiff contends that, because his motorized bicycle was an ORV, defendant had no need to inspect it, which rendered moot its protestations over spoliation. Plaintiff asserts that, because an ORV is exempt from no-fault insurance obligations, he was entitled to receive PIP benefits from defendant, the no-fault insurer of the automobile involved in the accident. We disagree.

Under the no-fault act, an ORV is "a motor-driven recreation vehicle designed for off-road use and capable of cross-country travel without benefit of road or trail, on or immediately over land, snow, ice, marsh, swampland, or other natural terrain." MCL 500.3101(2)(j). The parties did not dispute that plaintiff's motorized bicycle was powered by a gasoline combustion engine, thus a motor-driven vehicle, at the time of the accident. See MCL 257.79 (defining "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices exclusively moved by human power"). Whether plaintiff's motorized bicycle constituted an ORV requires determining whether the vehicle was of recreational purpose or character, and "designed for off-road use and capable of cross-country travel without benefit of road or trail . . . ." MCL 500.3101(2)(j); see *Nelson*, 441 Mich 511 n 7 (explaining that the "purpose and design of the vehicle may determine whether the vehicle meets the definition of an ORV.").

Courts have looked to whether a vehicle could be operated on a public highway, including whether it had safety features necessary for highway use. In *Nelson*, our Supreme Court concluded that an ORV constituted a motorcycle designed for only off-road use and could not legally be operated on public highways because it did not have a headlight, turn signals, or brake lights, and had "knobby tires and higher suspension . . . useful only in negotiating extremely difficult terrain." *Id.* at 520. In *Gividen v Bristol West Ins Co*, 305 Mich App 639, 643; 854 NW2d 200 (2014), this Court determined that a Jeep "modified to the extent that it was no longer designed for operation upon a public highway" for want of doors, a rearview mirror, functioning headlights, taillights, turn signals, speedometer, or odometer, and equipped with a roll bar and expensive tires that were impractical for driving on a paved road, had been "rendered an ORV". In *Mich Millers*, 156 Mich App at 825-826, this Court considered a trail bike an ORV because it lacked a headlight, taillight, turn signals, a rearview mirror, a speedometer, and had been designed for off-road use.

In this case, because plaintiff disposed of his motorized bicycle after the accident, including its motor, it could not be examined to ascertain whether it had features for off-road use, or if it had safety features for highway use, all relevant for determining whether it could properly be classified as an ORV as plaintiff claims. See *Nelson*, 441 Mich at 520; *Gividen*, 305 Mich App at 643-644.

Plaintiff's testimony indicates that his motorized bicycle had at least some basic safety features consistent with use on public roadways such as a gasoline-powered motor, an exhaust system, front and rear brakes, lights, a clutch, and a speedometer-odometer.[6]

The record reflects that plaintiff extensively used the motorized bicycle for transportation on paved roadways and not for off-road use. Because the motorized bicycle's safety features for roadway use would have been relevant to whether it qualified as an ORV, and the failure to produce the bicycle precluded defendant from examining it, we disagree with plaintiff that defendant's concerns over spoliation were moot.

Plaintiff's testimony regarding the purpose as well as his actual use of the motorized bicycle indicates that it was not a "recreation vehicle designed for off-road use . . . ." MCL 500.3101(2)(j). Plaintiff testified that he used his motorized bicycle regularly on public roads for transportation around town, to the store, and to and from work, and it served as his only personal means of transportation. He purchased it to upgrade from his reliance on a conventional bicycle to commute to work. He had a suspended driver's license and he put over 950 miles on his motorized bicycle during the three months he owned it before the accident. No evidence established that plaintiff's motorized bicycle had been designed for the purpose of off-road use. Further, no evidence established that plaintiff ever used the motorized bicycle for off-road recreation, or otherwise on any surfaces other than public roads.

The record evidence does not support concluding that, as a matter of law, plaintiff's motorized bicycle constituted an ORV. Based on plaintiff's admitted extensive use of the motorized bicycle for transportation on public roads and the lack of evidence of off-road recreational use, plus the evidence that it had road use related components, plaintiff's motorized bicycle did not fit the ORV category under the no-fault act. We are also not persuaded by plaintiff's argument for categorizing his motorized bicycle as an ORV based on the police officer's testimony or plaintiff's reference to the website of the bicycle manufacturer. Although the officer testified that, before the accident, his department determined that the motor on plaintiff's bicycle was not "big enough" to cite plaintiff for operating a vehicle with a suspended license, the record reflects that the police never definitively determined the actual size of the motor, its gearing, or the maximum speed at which it could travel. The officer never inspected it and offered no testimony that plaintiff used it for off-road recreation. Further, engine size is not determinative

---

[6] Although the record contains photographs of plaintiff's motorized bicycle at the accident scene, their poor quality and lack of clarity prohibit ascertaining many of its features. Plaintiff submitted a photograph of the motorized bicycle that he built after the accident by adding the motor and selected other parts from the vehicle involved in the accident to a new frame. That photograph, however, depicted the bicycle from a distance that failed to reveal in detail its features. The police did not inspect plaintiff's motorized bicycle at the scene or after the accident, and the police officer's description lacked specificity sufficient to determine the nature of the motorized bicycle for no-fault purposes.

whether the subject motorized bicycle constituted an ORV under the no-fault act. MCL 500.3101(2)(j) does not require a specified motor size to constitute an ORV.[7]

The website on which plaintiff relies merely offers the manufacturer's general description of its mountain bikes but nothing in evidence connects the model featured—which notably lacked a motor—to plaintiff's particular motorized bicycle involved in the accident. Further, the website description does not confirm the nature of the subject motorized bicycle or its categorization as an ORV. The record reflects that the previous owner modified the bicycle by attaching a combustion engine. Without inspection of the subject motorized bicycle to definitively determine its features and operational capabilities, its categorization for no-fault purposes could not be done.

Plaintiff contends that not being cited for operating a vehicle under the influence or for operating a vehicle with a suspended license at the time of the accident authoritatively determines that he drove an ORV at the time of the accident. We disagree because whether he received any citation has no bearing on the issue of the categorization of the vehicle for no-fault purposes.[8]

The record does not establish, as a matter of law, that plaintiff's motorized bicycle qualified as an ORV under the no-fault act. The record tends to indicate otherwise. Because the specific features of plaintiff's motorized bicycle were relevant to determination of its categorization as an ORV, a moped, or an uninsured motorcycle for purposes of plaintiff's entitlement to receive PIP benefits, defendant had the right to inspect the motorized bicycle to ascertain its specific features and functionality. Therefore, we reject plaintiff's argument that defendant's protestations over spoliation of evidence were moot on the ground that he drove an ORV.

## C. DISMISSAL FOR SPOLIATION OF EVIDENCE

Plaintiff argues that the trial court abused its discretion by dismissing his case as a sanction for his failure to preserve his motorized bicycle as evidence. We disagree.

" 'Even when an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action.' " *Bloemendaal*, 255 Mich App at 212, quoting *Brenner v Kolk*, 226 Mich App 149, 162; 573 NW2d 65 (1997). Where a party fails to preserve evidence, either deliberately or negligently, that it knows, or should know, is relevant to his case, and the other party is unfairly prejudiced because of the resulting inability to examine the evidence, the trial court has the

---

[7] Specific motor specifications distinguish a moped from a motorcycle. Under MCL 500.3101(2)(e), a moped engine cannot exceed 100 cc displacement or propel the vehicle over 30 miles per hour as provided in MCL 257.32b; whereas, under MCL 500.3101(2)(f), a motorcycle engine must exceed 50 cc displacement.

[8] Further, although plaintiff testified that he drank a few beers before he left work the day the accident occurred, the record lacks any evidence regarding his blood alcohol level or why the police did not charge him with any form of drinking and driving. The police officer testified that, although he may have suspected alcohol, he did not administer a breathalyzer because plaintiff lay on the pavement unconscious and bleeding from his face.

authority, derived from its inherent powers, to sanction the errant party to promote fairness and justice. *Bloemendaal*, 255 Mich App at 211-212; *Brenner*, 226 Mich App at 157, 160-163. Generally, "a trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Bloemendaal*, 255 Mich App at 212. " 'Dismissal is a drastic step that should be taken cautiously.' " *Id.* at 214, quoting *Brenner*, 226 Mich App at 163; see also *Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 243; 635 NW2d 379 (2001).

Dismissal is appropriate where the record indicates that a party engaged in "egregious conduct." *Brenner*, 226 Mich App at 163. Accordingly, "[b]efore imposing the sanction of dismissal, the trial court must carefully evaluate all available options on the record and conclude that dismissal is just and proper." *Bloemendaal*, 255 Mich App at 214; see also *Citizens*, 247 Mich App at 243. "A lesser appropriate sanction could be the exclusion of evidence that unfairly prejudices the other party or an instruction that the jury may draw an inference adverse to the culpable party from the absence of the evidence." *Bloemendaal*, 255 Mich App at 212. See also *Citizens*, 247 Mich App at 243.

In this case, the trial court correctly determined that the features of plaintiff's motorized bicycle were highly relevant to his claim. Whether the bicycle qualified under the no-fault act as an uninsured motorcycle, a moped, or an ORV determined defendant's liability for PIP benefits. The record establishes that plaintiff knew, or should have known, that his motorized bicycle had particular relevance to the case even before litigation commenced. The record supports the trial court's conclusion that plaintiff knew of the potential for litigation resulting from the accident well before he commenced this action. Plaintiff retained an attorney while still in the hospital recovering from the accident. That fact indicated that he contemplated litigation almost immediately. Four days after the accident, plaintiff's retained counsel sent a letter to the driver of the automobile involved in the accident regarding plaintiff's claim for no-fault benefits. Thereafter, defendant and plaintiff's counsel corresponded about defendant's potential liability. The particular properties of the motorized bicycle involved in the accident were especially relevant to a fundamental issue in the case.

Moreover, before commencement of this litigation, defendant sent two letters to plaintiff's counsel asking to inspect plaintiff's vehicle. Defendant specifically advised that it served as evidence with importance for its investigation and emphasized that plaintiff should not alter, modify, change, or discard it before inspection. Although plaintiff may have discarded his bicycle's damaged frame shortly after the accident, the record reflects that he salvaged the motor and certain other parts and installed them on another bicycle which he then used for several months until the motor ceased functioning in February 2017. Plaintiff testified that he discarded the motor in March or April 2017, months after defendant repeatedly requested to inspect his vehicle. The trial court properly concluded that plaintiff knew, or reasonably should have known, that his motorized bicycle had particular relevance to litigation involving the accident and that he had a duty to preserve it. Nevertheless, plaintiff disposed of the evidence.

We find no merit to plaintiff's assertion on appeal that he could reasonably assume that the nature of his motorized bicycle was not in question because defendant initially sent two letters denying liability and did not ask to inspect the bicycle until December 2016, slightly more than

three months after the accident. Plaintiff disposed of the motor, a critical piece of evidence, in March or April 2017, after defendant's requests to inspect it and explicit instruction that the bicycle constituted evidence that should be preserved for inspection. Although plaintiff correctly reports that defendant sent denial letters to plaintiff's counsel, those denials concerned potential liability claims for bodily injury, not his claim for no-fault PIP benefits. Nevertheless, defendant's denial of liability signaled that litigation likely would follow.

Plaintiff also asserts that the motorized bicycle was in police custody immediately after the accident but defendant lacked interest in inspecting it. The police officer, however, testified that it was never taken into police custody. The police merely stored it in the station's garage as a courtesy to plaintiff. The record does not establish that defendant had any opportunity to inspect the bicycle before plaintiff retrieved it. Nor does the record indicate that plaintiff informed defendant of its location and availability for inspection at any time.

The trial court also correctly concluded that plaintiff's failure to preserve the motorized bicycle unfairly prejudiced defendant by leaving defendant without the opportunity to examine or test it to ascertain its motor size, maximum speed, and whether operation involved shifting gears. Plaintiff's spoliation of the evidence eliminated defenses that may have been available to defendant. Plaintiff failed to recall the name of the friend or co-worker who assembled and sold the motorized bicycle to him, and plaintiff produced no receipt that memorialized the sale or other documentation that provided the motor's specifications.[9] Plaintiff also did not know the brand name of the motor or model. The record does not indicate the existence of any record of a previous inspection or examination of the motorized bicycle or photographs of the motorized bicycle before the accident that revealed the information necessary for determining its categorization for no-fault purposes. The web page plaintiff submitted lacked relevance regarding the issue. Accordingly, the record is devoid of any indication that defendant could have investigated the properties of the subject bicycle or motor. Plaintiff's disposal of the bicycle and motor left defendant entirely unable to rebut or otherwise challenge plaintiff's testimony regarding the specific features of the motorized bicycle relevant to determining whether it constituted an uninsured motorcycle, a moped, or an ORV for no-fault purposes. Plaintiff's failure to preserve the evidence unfairly prejudiced defendant. The trial court, therefore, did not abuse its discretion by sanctioning plaintiff.

The trial court's sanction decision did not fall outside the range of reasonable and principled outcomes. *Pirgu,* 499 Mich at 274; *Maldonado*, 476 Mich at 388. The record reflects that, before concluding that dismissal was just and proper under the circumstances, the trial court applied the correct legal standard by finding that plaintiff committed egregious conduct that a lesser sanction could not remedy. The trial court considered the imposition of the lesser sanctions of precluding plaintiff from testifying concerning any description of the motorized bicycle or providing an adverse inference instruction. See *Bloemendaal*, 255 Mich App at 214-215; *Citizens*, 247 Mich App at 244-245; *Brenner*, 226 Mich App at 163-164. The prejudice defendant suffered because of plaintiff's spoliation, however, could not be satisfactorily remedied with those lesser

---

[9] Plaintiff testified that the seller told him that the motorized bicycle could go faster than 30 mph, which exceeds the maximum speed for a moped under MCL 257.32b. MCL 500.3101(2)(e).

sanctions. By denying defendant the opportunity to inspect his motorized bicycle, plaintiff deprived defendant of the opportunity to develop any evidence to rebut plaintiff's testimony regarding its characteristics, leaving defendant at an unfair disadvantage. See *Citizens*, 247 Mich App at 244. The trial court properly recognized that the motorized bicycle constituted the singular piece of evidence that could prove whether it was a moped or an uninsured motorcycle. The record reflects that after properly considering other remedies, the trial court correctly determined them insufficient to remedy the prejudice faced by defendant.

Plaintiff argues that dismissal was too drastic a sanction on the grounds that he did not intentionally destroy the motorized bicycle to hide the truth or to otherwise prevent defendant from inspecting it. But plaintiff's motivation for disposing of his motorized bicycle does not excuse his failure to preserve evidence that he knew or reasonably should have known had special relevance to his claim for PIP benefits from defendant. See *Bloemendaal*, 255 Mich App at 211, 213-215 (explaining that even though the plaintiff did not act deliberately, his conduct justified dismissal where the defendants were severely prejudiced by the plaintiff's deprivation of the opportunity to inspect evidence critical to the plaintiff's theory of liability).

Further, the record reflects that plaintiff objected to defendant's motion to inspect and asserted that he "was a pedestrian struck by [defendant's] insured," and answered defendant's interrogatory that requested a detailed description of plaintiff's vehicle by responding that he merely rode a bike at the time of the subject accident. Such conduct appears deliberately evasiveness. The record also indicates that plaintiff's counsel represented in February 2018 that plaintiff's vehicle would be produced, but defendant was not informed until June 2018 that plaintiff had disposed of the motorized bicycle long before. Plaintiff's egregious conduct justified the trial court's imposition of the sanction of dismissal. The trial court, therefore, did not abuse its discretion.

Because we conclude that the trial court acted within its discretion in dismissing the case because of plaintiff's spoliation of evidence, we need not decide whether the trial court erred by granting defendant summary disposition of his claim on the merits. Even so, we note that, had the trial court exercised its inherent authority and precluded plaintiff from testifying regarding the motorized bicycle, in the absence of plaintiff's testimony, the record reflects that insufficient evidence existed concerning the pertinent characteristics of the motorized bicycle to establish plaintiff's entitlement to PIP benefits. Accordingly, alternative grounds existed for granting defendant summary disposition of plaintiff's claims.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien
/s/ James Robert Redford