*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BARBARA VINCENT, Guardian of WV, a mentally incapacitated individual,

Plaintiff-Appellant,

v

AAA INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
November 18, 2024
10:00 AM

No. 368830
Wayne Circuit Court
LC No. 21-016056-NF

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Plaintiff, as guardian of her husband, WV, appeals as of right an order granting summary disposition to defendant under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

This action arises from a car accident that occurred on June 14, 1977. WV was a teenager when the accident occurred. He was the passenger in a car being driven by Jane Hollyer and owned by William Hollyer. The car was struck by a school bus driven by Janet Jeffrey when Jane Hollyer made a left turn at an intersection. The complaint indicated that WV was injured as a result of the accident and sustained a traumatic brain injury (TBI), among other injuries. Plaintiff alleges that prior to the commencement of this action, WV began to develop signs of early-onset Alzheimer's disease, which she maintains is related to the TBI caused by the accident. Plaintiff became WV's guardian as a result of his deteriorating health condition.[1]

---

[1] No further information regarding WV's medical condition is available in the record. Additionally, an order of appointment indicating that a probate court formally appointed Barbara as WV's guardian is not included in the record. However, because the issue was not contested below, we presume that Barbara is, in fact, WV's legal guardian.

Plaintiff filed her complaint on WV's behalf in December 2021, seeking no-fault personal insurance protection (PIP) benefits from defendant. She claimed that at the time of the accident, WV was a passenger in a car and that WV's parents carried an insurance policy issued by defendant. Plaintiff additionally alleged that after the accident, WV "filed a claim with AAA and received first party benefits under his insurance plan with a claim number known to the Defendant." However, plaintiff did not know the claim number and had no information about a specific policy under which the claim was filed.

In May 2022, defendant responded to the complaint by filing a motion for a more definite statement. Defendant noted that plaintiff failed to attach any information to help determine whether WV had ever filed a claim for PIP benefits in relation to the 1977 accident, such as a copy of the policy, an insurance policy number, or a claim number for the incident. Defendant stated that no claims had been filed by WV or plaintiff in the nearly 45 years following the accident. Defendant argued that the complaint failed to "include sufficient facts related to the alleged policy and/or claim to reasonably inform Defendant of the claims it is called on to defend."

In June 2022, plaintiff filed an answer to the motion for a more definite statement. Plaintiff stated that a third-party no-fault case pertaining to the accident was filed after the accident. She submitted several interrogatory answers from that case, which she claimed showed that defendant was responsible for providing PIP benefits. However, no specific claim or policy information is listed in the responses. The interrogatory answers merely state, without elaboration, that a policy existed, but that the policy and claim numbers are unknown.

Defendant's motion for a more definite statement was granted without oral argument. Plaintiff moved for reconsideration, arguing that her complaint adequately notified defendant of the nature of her claims and gave sufficient information to allow defendant to find the information related to WV's accident. She explained that only defendant had access to the specific claim and policy information needed to substantiate the allegations. Plaintiff continued:

> Defendant AAA knew in 1978 that Plaintiff was involved in a catastrophic accident and suffered a severe traumatic brain injury. They sold a policy of insurance with lifetime medical benefits. The insurance company should not be rewarded for failing to maintain its records. Indeed, the subject accident was so severe that AAA knew or should have known that future claims were not only possible, but probable. This should be recognized by the Court as impermissible spoliation.

Plaintiff asked the court to sanction defendant for spoliation. She further requested that the court set a discovery schedule and allow her to locate the insurance policy at issue.

In August 2022, plaintiff filed a motion to compel depositions and have a request for admissions deemed admitted. Plaintiff argued that although its motion for reconsideration was pending, discovery was still ongoing, and that defendant had been obstructive in responding to deposition scheduling requests and requests for admissions. She requested that the court grant the motion to compel and deem her requests for admissions submitted to defendant admitted.

The trial court granted plaintiff's motion to compel without oral argument. In October 2022, defendant moved for reconsideration, arguing that it had no obligation to respond to

discovery requests until plaintiff filed an amended complaint. Defendant explained that under MCR 2.301(A)(1), discovery is prohibited prior to the filing of initial disclosures. Thus, by granting plaintiff's motion to compel, the trial court had essentially put the cart before the horse. Defendant claimed that the court "was either misled by a palpable error—an assumption that [plaintiff] served initial disclosures—or mistaken in believing that [plaintiff] was permitted to seek discovery before service of initial disclosures." Later that same month, the trial court entered two orders: one denying plaintiff's motion for reconsideration of the order granting defendant's motion for a more definite statement, and one granting defendant's motion for reconsideration of the order granting plaintiff's motion to compel.

In February 2023, defendant answered plaintiff's original complaint. Plaintiff never filed an amended complaint, despite the trial court having ordered it. Defendant generally denied liability in response to the allegations put forth by plaintiff, and submitted a series of affirmative defenses, including that plaintiff failed to "provide[] written notice of injury within one (1) year of the date of loss," meaning that their claims were barred by the statute of limitations applicable to no-fault lawsuits under MCL 500.3145.

Three depositions were taken in June 2023: one from WV's brother, John Vincent; one from plaintiff; and one from Caroline Dettloff, defendant's most knowledgeable person regarding record retention policies. John testified that at the time of the accident, he believed all of the family cars were insured through defendant, with the exception of his father's company vehicle. John stated that the insurance policy was handled by his and WV's parents. He was confident that his parents made a claim for PIP benefits through defendant in relation to WV's 1977 accident, but could not support that claim with anything other than his own recollection. John explained that any documents were thrown away when the family moved their mother into an assisted living facility. He stated that "we didn't think we'd need anything from like 1977." John agreed that he had no evidence that PIP benefits were paid to WV in relation to the accident.

Plaintiff testified that she had no firsthand knowledge about WV's accident and was unaware of any evidence indicating that a claim was made to defendant in relation to the accident. When asked about WV's employment history, she stated that he was working in construction until 2019, and had previously worked "at a pet grooming place. He worked at a pizza place, and then [for] Terminix[,]" an insect extermination company. She testified that she did not believe he had the mental capacity to understand or answer questions, and would be unable to give testimony under oath.

Caroline Dettloff, a regional claim manager for defendant, was produced as defendant's "person most knowledgeable" about defendant's record retention policies. She testified that she had worked for defendant for 39 years. Dettloff asserted that she had knowledge of defendant's record retention and destruction policies, and managed a team of employees who were responsible for reviewing claim files scheduled for destruction. Dettloff testified that prior to 1997, defendant's record retention policy indicated that any PIP claims where payment had not been issued would be destroyed. According to the policy, if payment was issued, the claim information would not be destroyed, and the recordkeeper would "be notified when destruction may resume on these files[.]" Dettloff explained that defendant's no-fault claim record retention policy was modified in 1997 to reflect that claim files would not be destroyed if defendant issued any payments to the claimant. Dettloff explained that the only way to determine whether WV's

specific claim information was destroyed would be to look at the claim file. However, no-fault claim files were typically destroyed within four years of the relevant accident, and digital file storage did not commence until 1985. Thus, a record of any claim filed on WV's behalf would have potentially been destroyed almost 40 years before plaintiff initiated her lawsuit.

Dettloff indicated that she searched for relevant claims and could not find specific information regarding policies in the names of WV's parents or information regarding a claim made following the 1977 accident. Dettloff confirmed that the only relevant information she discovered was a report of loss filed by William Hollyer, which matched the date of the accident. However, Dettloff explained that although defendant made payments on the Hollyer policy in 1977, 1981, and 1982, there was no way to determine whether those payments were made to WV or whether they were made to Jane Hollyer, the driver of the car.

In July 2023, plaintiff filed a motion for entry of a default and for sanctions against defendant for discovery violations. Plaintiff stated that in order to proceed with her lawsuit, she needed information regarding defendant's record retention policies and its records concerning WV. Despite issuing eight separate notices of taking deposition *duces tecum*, defendant failed to produce the person most knowledgeable about its record retention policies. According to plaintiff, once defendant finally produced Dettloff as their most knowledgeable person, she did not know the answers to many of what plaintiff considered pertinent questions as to record retention and as to any policies that might exist in relation to WV's accident. After the deposition, defendant sent plaintiff additional information, indicating that Dettloff executed several more searches in an effort to find information about a policy applicable to WV. According to plaintiff, those searches proved that policies existed for plaintiff's parents. Plaintiff asked the court to enter a default in her favor and to sanction defendant.

Defendant answered that the scheduling issues with regard to Dettloff's deposition were a result of plaintiff failing to coordinate times and dates with defendant. Defendant also challenged plaintiff's contention that Dettloff was not the most knowledgeable person available for deposition regarding defendant's record retention policies. According to defendant,

> Counsel's gripe appears to be that Ms. Dettloff could not testify as to why certain policies going back 26 years ago and even 44 years ago were made or who made them. Counsel fails to identify how that is even relevant to any issue in dispute in this case. Ms. Dettloff was able to identify the record retention policy as of 1979 which called for the destruction of PIP claim files within 4 years of the accident, and that policy did not change until 1997. So from that we can glean that any documents from a 1977 accident would have been destroyed sometime in the early 1980s. [Footnote omitted.]

Defendant argued that plaintiff had failed to produce evidence that a claim had been filed in relation to WV's accident within one year of the incident, and that her claim was now barred under MCL 500.3145.

Defendant moved for summary disposition in August 2023. Defendant again argued that plaintiff's claims were barred by the one-year back rule set forth under MCL 500.3145. Defendant also indicated that Dettloff had searched the records again and turned up no information indicating

that a claim was made on plaintiff's behalf for the 1977 accident. At most, defendant argued that WV likely received a bodily injury settlement as a result of the 1980 lawsuit, which did not name defendant as a party. Defendant additionally argued that plaintiff erroneously claimed that defendant's record retention policy constituted impermissible spoliation of evidence. However, defendant argued that it was never put on notice that litigation might arise in relation to plaintiff's accident nearly 50 years earlier.

Plaintiff responded that the one-year back rule did not bar her claim because either 1) defendant failed to keep the claim file, or 2) defendant had the claim file and refused to produce it. According to plaintiff, "[d]efendant's own misconduct is the sole reason the lack of definitive information exists." Plaintiff argued that defendant violated its affirmative duty to preserve evidence by allegedly destroying all claim files related to the 1977 accident. Plaintiff contended that "in a state where no-fault insurance benefit payments are a lifetime benefit, there cannot be any reward to insurers that fail to keep accurate records of claims[,]" and asked the trial court to deny defendant's motion for summary disposition.

A hearing was held regarding plaintiff's motion for entry of a default and sanctions that same month. The trial court indicated that it previously asked defendant to produce Dettloff to give testimony. Dettloff testified that after her deposition, she did several more searches for evidence of a policy in either of WV's parents' names. Dettloff located what could either be a no-fault insurance policy or a AAA membership number for WV's father, given that defendant offers membership services even to those who do not hold a no-fault insurance policy through the company. She testified that based on the records available, she could not conclusively determine whether a policy existed for WV's father when the accident occurred in 1977. She additionally testified that her search returned no indication that a PIP benefits claim was made in relation to the 1977 accident.

In November 2023, the trial court heard oral argument on defendant's motion for summary disposition, and the parties largely argued consistent with their briefs. The trial court observed that WV was injured in 1977, and that according to the materials provided to the court by the parties, as well as the testimony offered by Dettloff at the hearing in October 2023, there was no conclusive evidence to show that WV was covered by an insurance policy through defendant when the accident occurred. Likewise, no evidence was presented to indicate that a claim was made on WV's behalf in relation to the accident. Accordingly, the trial court granted defendant's motion for summary disposition. An order to that effect was later entered. This appeal followed.

II. ANALYSIS

A. STANDARD OF REVIEW

Defendant moved for summary disposition under MCR 2.116(C)(10). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact

-5-

exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

To the extent that plaintiff raises claims regarding sanctions for spoliation and the entry of a default for discovery violations, we review such issues for an abuse of the court's discretion. *Pugno v Blue Harvest Farms, LLC*, 326 Mich App 1, 24; 930 NW2d 393 (2018); *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

## B. THE ONE-YEAR BACK RULE

Plaintiff argues that the trial court erred by granting summary disposition to defendant because a genuine issue of material fact existed as to whether the one-year back rule set forth in MCL 500.3145 applied to bar her claim. Plaintiff also argues that defendant should be estopped from raising the one-year back rule as an affirmative defense. We disagree.

MCL 500.3145 states, in relevant part:

(1) An action for recovery of personal protection insurance benefits payable under this chapter for an accidental bodily injury may not be commenced later than 1 year after the date of the accident that caused the injury unless written notice of injury as provided in subsection (4) has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.

(2) Subject to subsection (3), if the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss, or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

(3) A period of limitations applicable under subsection (2) to the commencement of an action and the recovery of benefits is tolled from the date of a specific claim for payment of the benefits until the date the insurer formally denies the claim. This subsection does not apply if the person claiming the benefits fails to pursue the claim with reasonable diligence.

In simpler terms, "a person filing a claim for PIP benefits must do so within a year of the accident unless the insured gives written notice of injury or previously received PIP benefits from the insurer." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 208; 815 NW2d 412 (2012). Additionally, this Court has clarified that the statute contains two distinct limitations: one on the time for commencing an action (one year from the accident or the most recent loss if notice was given or benefits were previously paid), and another on the recovery of losses (recovery is limited to the year before the action was filed). *Linden v Citizens Ins Co of America*, 308 Mich App 89; 862 NW2d 438 (2014).

The crux of the issue here is whether plaintiff can prove that a claim was made on WV's behalf within one year of his accident, which took place on June 14, 1977. Plaintiff entered into this lawsuit expecting to discover evidence of a policy held either by WV's parents or the Hollyers, given that WV was a minor when the accident occurred. Both parties extensively searched for a policy or claim that would prove WV was entitled to PIP benefits. Unfortunately, despite these efforts, neither party turned up any conclusive results. Defendant produced a document in discovery evidencing that William Hollyer, the owner of the car in which WV was a passenger when the accident occurred, had a policy through defendant and made a claim in relation to the 1977 accident. But there was simply no evidence that WV's parents ever submitted a timely claim for WV.

As Dettloff explained below, defendant's record retention policy prior to 1997 only required the company to retain records of PIP claims where payment had been issued. After four years, paper claim files were typically destroyed. Defendant did not begin digitally storing claim files until 1985; thus, it appeared that no documentation still existed to substantiate plaintiff's allegation that defendant paid PIP benefits to WV following the accident. Based on the evidence available, even when viewed in the light most favorable to plaintiff, no genuine issue of material fact existed to preclude summary disposition under MCR 2.116(C)(10). Plaintiff failed to show that WV's parents ever made a no-fault insurance claim on his behalf.

Plaintiff nevertheless maintains that defendant was estopped from claiming the one-year back rule as an affirmative defense because defendant either 1) failed to maintain the claim file or 2) has a copy of the claim file and refused to produce it. In support of her argument, plaintiff cites *Lothian v Detroit*, 414 Mich 160, 177; 342 NW2d 9 (1982), in which our Supreme Court explained that in order to be estopped from raising an affirmative defense, "one must establish that there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party."

Plaintiff has not produced evidence that defendant committed misconduct by destroying a claim file from 1977, nor has plaintiff shown that defendant made false representations or concealed material facts relevant to WV's claim for PIP benefits. There is no smoking gun in this case. Plaintiff's claims cannot be substantiated. According to defendant's pre-1997 record retention policy, any information about a claim made on WV's behalf in 1977 likely existed as a paper record. Such records would have been destroyed by 1985.[2] Plaintiff therefore cannot show that defendant should be estopped from raising the one-year back rule as an affirmative defense in this matter.

## C. SANCTIONS

Plaintiff also argues that defendant should have been sanctioned for spoliation and that a default should have been entered against defendant for discovery violations. We disagree.

---

[2] Whether it constituted spoliation to destroy these files will be discussed in Issue II(C), *infra*.

Trial courts have "authority to sanction litigant misconduct, even when there is no statute or court rule addressing the particular form of misconduct, based on a court's fundamental interest in protecting its integrity and that of the judicial system." *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997). More specifically, a "trial court has the authority, derived from its inherent powers, to sanction a party" for spoliation, which occurs when a party "fail[s] to preserve evidence that it knows or should know is relevant before litigation has commenced." *Id*. A party has a duty to preserve evidence that is material to litigation, "[e]ven when an action has not been commenced and there is only a potential for litigation[.]" *Id*. at 162; see also *Komendat v Gifford*, 334 Mich App 138, 150; 964 NW2d 75 (2020) (stating that the rule regarding spoliation is limited to evidence that is material to the litigation). If a party fails to preserve such evidence, the court may conclude that spoliation has occurred. *Brenner*, 226 Mich App at 162. However, a party accused of committing spoliation may rebut any adverse inferences drawn from the destruction of evidence by presenting a "nonfraudulent explanation" for the decision to destroy said evidence. *Ward v Consol Rail Corp*, 472 Mich 77, 85; 693 NW2d 366 (2005). "[N]o adverse inference arises if [the party] has a reasonable explanation for its failure to produce the missing evidence." *Id*. at 86.

There is no dispute that the evidence at issue was material to this lawsuit. What the parties ultimately disagree on is whether the litigation in this case was foreseeable, such that defendant should have preserved any claim and policy information from the 1977 accident. Dettloff explained in the court below that defendant's record retention policy prior to 1997 required the destruction of claim files after four years, and that paper records were not digitized until 1985. As discussed above, there is no evidence that any person submitted a claim to defendant on WV's behalf in relation to the 1977 accident. The only evidence of a claim made in relation to the accident at all came from a review of William Hollyer's 1977 policy; however, any specific information about that claim has since been lost. There is no evidence that WV's family had auto insurance through defendant.[3] Although parties have a duty not to destroy evidence even if "there is only a potential for litigation," *Brenner*, 226 Mich App at 162, there is nothing here to suggest that defendant should have foreseen that plaintiff would seek PIP benefits 44 years after the accident occurred, and would need claim files and policy information from defendant to support her argument. Indeed, had any party known they should have saved accident information, it would seem to be WV, given the extent of his injuries at the time of the accident. Yet, according to John's testimony, the family destroyed their records around 2019. Thus, the destruction of the 1977 case files did not constitute spoliation for which sanctions are warranted.

Plaintiff likewise fails to show that the court abused its discretion by failing to enter a default against defendant for alleged discovery violations. Citing *Dean v Tucker*, 182 Mich App

---

[3] The trial court properly concluded WV provided no evidence that his family carried auto insurance through defendant. Plaintiff points to deposition testimony from WV's younger brother John, who asserted that WV's family insured their vehicles through defendant. This conclusion was based on his decades-old recollection of seeing AAA stickers and AAA travel information in the family-owned vehicles, as well as a vague memory of their father showing him where proof of insurance was kept in the family vehicle.

27, 32-33; 451 NW2d 571 (1990), plaintiff points out that a nonexhaustive list of factors is generally applied to determine whether a default is an appropriate sanction, including:

> (1) whether the violation was willful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the defendant, (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice, (5) whether there exists a history of plaintiff engaging in deliberate delay, (6) the degree of compliance by the plaintiff with other provisions of the court's order, (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice.

Plaintiff does not actually explain what evidence defendant failed to turn over. Instead, her argument presumes that defendant intentionally withheld the documents necessary to prove her claim. Along with her argument as to the documents, plaintiff contends that Dettloff was not the person most knowledgeable about defendant's record retention policies and that she fabricated her testimony at the hearing following plaintiff's motion for entry of default. Plaintiff has yet to support these contentions with proof, either in the court below or on appeal. Indeed, contrary to plaintiff's argument, it seems that defendant diligently attempted to find any information that it could about a policy issued to WV's parents or the Hollyers, or any information that would prove defendant received and paid a PIP-benefit claim for WV in 1977. Dettloff repeatedly explained her search methodologies, going so far as to revise those searches in response to new information given to her by plaintiff's counsel during her deposition, which once again turned up no information on a policy issued to WV's parents or a claim made on his behalf. And while plaintiff contends that defendant intentionally avoided turning Dettloff over for a deposition, the record merely indicates that a series of scheduling issues prevented her from being deposed in accordance with plaintiff's demands. Ultimately, the trial court did not abuse its discretion by declining to enter a default for discovery violations. While plaintiff is justifiably disappointed there is no evidence to substantiate her claim, logic does not support the conclusion plaintiff wants us to reach, i.e., that the non-existence of evidence nearly five decades after the accident should be attributable to defendant's misdeeds. While we appreciate this leaves plaintiff no recourse in this action, the trial court reached the proper outcome.

Affirmed.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel

-9-